STATE OF MAINE                         BUSINESS AND CONSUMER COURT

Cumberland, ss                         Location: Portland
                                       Docket No.: BCD-CV-11-28
                                       AMH - CuM - 10/25/2011

KAILE R. WARREN, JR.,                  )
RENT-A-HUSBAND LLC,                    )
RENT-A-HUSBAND ENTERPRISES,            )
LLC, and KW ENTERPRISES, INC.,         )
                                       )
                 Plaintiffs,           )
                                       )
        v.                             )
                                       )
PRETI, FLAHERTY, BELIVEAU &            )
PACHIOS, LLC, MARCUS, CREGG &          )
MISTRETTA, P.A., and ACE               )
HARDWARE CORP.,                        )
                                       )
                 Defendants            )
                                       )

### ORDER ON PLAINTIFFS' MOTION TO AMEND COMPLAINT
### AND DEFENDANT ACE HARDWARE CORP.'S MOTION TO DISMISS

This Order addresses Defendant Ace Hardware Corp.'s motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Maine Rules of Civil Procedure, and the subsequent motion of Plaintiffs Kaile R. Warren, Jr., Rent-A-Husband LLC, Rent-A-Husband Enterprises, LLC, and KW Enterprises, Inc. to amend their complaint for a second time.

Defendant Ace's motion to sever the claims against it from those against the other two defendants, citing M.R. Civ. P. 20 and 21 is addressed in a separate order. The court held oral argument on all pending motions in this case on October 12, 2011.

Ordinarily Ace's motion to dismiss would be addressed before the Plaintiffs' subsequent motion to amend, but that motion was directed to Plaintiffs' first amended complaint, which would be superseded if Plaintiffs' motion to amend were granted. Accordingly, the court focuses initially on the motion to amend, solely to determine whether leave to amend would be

1

granted, without reference to the substantive sufficiency of the claims in the proposed second amended complaint. Then the court addresses the motion to dismiss, the question being whether any of the counts relating to Ace in either the first amended complaint or the proposed second amended complaint should be dismissed for failing to state a viable claim for relief against Ace.

1.  *The Standard for Granting Leave to Amend*

After a responsive pleading is served, a plaintiff may amend its complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M.R. Civ. P. 15(a); *see also Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 21, 956 A.2d 110, 118.[1] "Whether to allow a pleading amendment rests with the court's sound discretion." *Holden v. Weinschenk*, 1998 ME 185, ¶ 6, 715 A.2d 915, 917 (quoting *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 616 (Me. 1992)).

Courts should freely allow an amendment to a complaint except for bad faith, dilatory tactics, or undue delay resulting in prejudice to the opponent. *Longley v. Knapp*, 1998 ME 142, ¶ 19, 713 A.2d 939, 945. However, where "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *See Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994).

---

[1]  Plaintiffs assert that Ace is not entitled to object to their motion to amend because its motion to dismiss is not a "responsive pleading" for purposes of Rule 15(a). The court is inclined to agree with Ace's contrary position that a response of either an answer or a Rule 12 motion cuts off the complaining party's right to amend without leave of court, especially when the complaining party has already amended once as of right. The court assumes therefore that leave to amend is required, albeit under the "freely given" standard of Rule 15.

[2] Counts IX to XIII are against all Defendants.

[3] Maine Rule of Civil Procedure 8 mirrors its federal counterpart, but Maine has yet to adopt federal pleading requirements for civil cases, contrary to Ace's argument under *Ashcroft v. Iqbal*, 129 S. Ct 1937, 173 L. Ed 2d 868, (2009). Indeed, as the Supreme Judicial Court of Maine, sitting as the Law Court, has noted on occasion, Maine rules of procedure are not necessarily to be given the same interpretation as identically worded federal rules of procedure. *See e.g. State of Maine v. Dumond*, 2000 ME 95, ¶ 10, 751 A.2d 1014, 1017 (stating that although Maine Rule of Criminal Procedure 30(b) tracks the counterpart

2

The proposed amended complaint does not add any claims against any of the defendants; it purports instead to clarify what the Plaintiffs claim to be the connections between the asserted actions of the several defendants. Only Defendant Ace opposes the Plaintiffs' proposed amendment, on the ground that granting the motion to amend would be futile in light of its motion to dismiss pursuant to M.R. Civ. P. 12(b)(6). But for that contention, the court would grant the motion to amend, because it has been timely made and does not cause any cognizable prejudice to any party. Therefore, the analysis turns to Ace's motion to dismiss to determine whether any of the counts against Ace should be dismissed.

2.      *Ace's Motion to Dismiss*

The counts pertaining to Ace are as follows:

| | |
|---|---|
| Count V: | Defamation |
| Count VI: | False Light |
| Count VII: | Negligent Misrepresentation |
| Count VIII: | Intentional Misrepresentation |
| Count IX: | Intentional Infliction of Emotional Distress as to Plaintiff Warren[2] |
| Count X: | Negligent Infliction of Emotional Distress as to Plaintiff Warren |
| Count XI: | Vicarious Liability |
| Count XII: | Punitive Damages |
| Count XIII: | Economic Damages for Restitution |
| Count XIV: | Promissory Estoppel |

"In reviewing [ ] a motion to dismiss, [the court] consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.*, 2011 ME 46, ¶ 16, 17 A.3d 123, 127. The court will "'examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Id.* (quoting *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, 832). "'Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim.'" *Id.*

---

[2] Counts IX to XIII are against all Defendants.

3

The Maine Rules of Civil Procedure incorporate principles of notice pleading. *See e.g.*, *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 21, 19 A.3d 823, 829. Rule 8 calls for "1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief which the pleader seeks." M.R. Civ. P. 8; *see also Bean v. Cummings*, 2008 ME 18, ¶ 8, 939 A.2d 676, 679 (discussing pleading requirements in light of recent United States Supreme Court decisions, and noting that Rule 9(b) identifies certain claims that require a heightened pleading standard such as fraud or mistake). Notice pleading requires the plaintiff to provide the opposing party with "fair notice of the claim." *Polk v. Town of Lubec*, 2000 ME 152, ¶ 18, 756 A.2d 510, 514 (quoting *E.N. Nason, Inc. v. Land-Ho Dev. Corp.*, 403 A.2d 1173, 1177 (Me. 1979)).[3]

With that framework in mind, the analysis turns to the specific counts of the complaint.

**Count V: Defamation**

The Plaintiffs allege that Ace made defamatory statements to the investigators in State of Maine Office of Securities and the Maine Attorney General's Office during the pendency of the criminal investigation against them. They allege that the statements were related to the "scope and extent of the relationship between [the parties]; the success of the Rent-A-Husband tested partnerships; and [] Ace's interest in obtaining an ownership stake in Rent-A-Husband including, but not limited to, statements claiming Ace [] did not have a longstanding working partnership with Rent-A-Husband; that the Rent-A-Husband testing was not that successful;

---

[3] Maine Rule of Civil Procedure 8 mirrors its federal counterpart, but Maine has yet to adopt federal pleading requirements for civil cases, contrary to Ace's argument under *Ashcroft v. Iqbal*, 129 S. Ct 1937, 173 L. Ed 2d 868, (2009). Indeed, as the Supreme Judicial Court of Maine, sitting as the Law Court, has noted on occasion, Maine rules of procedure are not necessarily to be given the same interpretation as identically worded federal rules of procedure. *See e.g. State of Maine v. Dumond*, 2000 ME 95, ¶ 10, 751 A.2d 1014, 1017 (stating that although Maine Rule of Criminal Procedure 30(b) tracks the counterpart federal rule, Maine does not follow the federal rule's same strict requirements); *Mondello v. General Elec. Co.*, 650 A.2d 941, 944 (Me. 1994) (stating that federal court interpretations of federal rules provide guidance, but are not binding, on Maine courts' interpretation of counterpart Maine rules).

4

and that Defendant Ace was not seriously interested in a buy-in or buy-out of Rent-A-Husband and did not represent to Plaintiffs that it was." (Compl. ¶ 163.) Ace claims that the statements were not defamatory, and further argues that they were absolutely privileged as they were made during a judicial proceeding.

In order to survive a motion to dismiss, a complaint for defamation must allege the following elements: a false and defamatory statement concerning another; an unprivileged publication to a third party; fault amounting at least to negligence on the part of the publisher; and actionability irrespective of special harm or the existence of special harm caused by the publication. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189, 1193; *Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985).

The Law Court has stated:

Any person has a qualified privilege to make statements to law enforcement or regulatory agencies regarding the conduct of others, where the person making the statement believes in good faith that the statement is true and indicates that a statutory standard administered by the agency may have been violated.

*Truman v. Browne*, 2001 ME 182, ¶ 15, 788 A.2d 168, 172. This conditional privilege, however, is lost where the defendant abuses the privilege. *Lester*, 596 A.2d at 69; *see also Cole*, 2000 ME 104, ¶ 7, 752 A.2d at 1194 (noting that "[w]hether the defendant abused his privilege is a question of fact"[; and o]nce it is determined that the defendant is entitled to the privilege, the burden shifts to the plaintiff "to come forward with evidence that could go to a jury that [the defendant] abused the privilege") (citing *Rippett v. Bemis*, 672 A.2d 82, 87 (Me. 1996) *and Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me. 1989)).

As "[a] motion to dismiss a complaint for failure to state a claim should not be granted if the pleading alleges facts which would entitle the plaintiff to relief upon some theory, or if it avers every essential element of a claim," *see Vahlsing Christina Corp. v. Stanley*, 487 A.2d 264, 267 (Me. 1985). Whether Ace's allegedly defamatory statements were privileged is a question

5

of fact. Because the Plaintiffs have alleged the elements of a defamation claim, Ace's motion

must be denied as to Count V.

**Count VI: False Light**

Plaintiffs also allege that Ace made statements that portrayed them in a false light with

the public.

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Restatement (Second) of Torts § 652E (1977).

*Cole v. Chandler, supra*, 2000 ME 104, ¶ 17, 752 A.2d at 1197.

Plaintiffs allege that Ace made false statements to the media concerning the scope and

extent of its business relationship with Plaintiffs; Ace's interest in obtaining an ownership stake

in Rent-A-Husband; and Ace's knowledge of Rent-A-Husband investors, and allege further that

these statements placed Plaintiffs in a light that would be highly offensive to a reasonable

person. Further, Plaintiffs assert that Ace made the statements knowing they were false, or in

reckless disregard of their falsity, and that the Plaintiffs suffered various forms of harm and

damages as a result.

Ace argues that the only alleged offensive statement that Plaintiffs could possibly be

referring to is its Media Statement issued in response to news reports in 2009 in which

Plaintiffs made unfavorable statements about Ace. Ace asserts that its Media Statement was

issued in order to protect its business reputation from these unfavorable statements, and

requests that the court consider the attached documentation of these statements in making its

decision.

The general rule is that only the facts alleged in the complaint may be considered on a

6

motion to dismiss. *Moody v. State Liquor and Lottery Comm.'n*, 2004 ME 20, ¶ 8, 843 A.2d 43, 47. However, Rule 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and *not excluded by the court,* the motion shall be treated as one for summary judgment." M.R. Civ. P. 12(b) (emphasis added). Whether the court accepts documents, additional factual claims, and other evidence is a discretionary determination. In this case, for the court to accept and consider Ace's additional materials or its characterization of the basis of Count VI as necessarily being limited to those statements would require Plaintiffs to be given leave to provide more material, and would in effect convert a Rule 12(b)(6) motion into a Rule 56 summary judgment procedure, without the benefit of the filings required by Rule 56 to help narrow or eliminate factual issues. Thus, the court declines to consider the extrinsic material tendered by Ace and limits review to the face of Plaintiffs' pleading.

Assessing Count VI under the Rule 12(b)(6) standard, the court concludes that the Plaintiffs have adequately alleged a claim for false light. *See Burns*, 2011 ME 61, ¶ 21, 19 A.3d at 829 (noting Maine's "forgiving" notice pleading standard, and recognizing that "an initial pleading may be presented in general terms," however, "by the time the parties are addressing a motion for summary judgment, a plaintiff must be prepared to clearly identify the asserted cause or causes of action and the elements of each claim," . . . [as w]ithout such definition, the parties may waste time and money litigating extraneous issues not generated by the pleadings"). Accordingly, Ace's motion to dismiss must be denied as to Count VI.

**Counts VII and VIII: Negligent and Intentional Misrepresentation**

In *Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771, the Law Court addressed both claims for intentional misrepresentation and negligent misrepresentation.

7

To prevail on a claim for intentional misrepresentation,

> the plaintiff must prove by clear and convincing evidence: (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage.

*Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 9, 832 A.2d 771, 773. "When a plaintiff alleges a failure to disclose rising to the level of a misrepresentation, the plaintiff must prove either (1) active concealment of the truth, or (2) a specific relationship imposing on the defendant an affirmative duty to disclose." *Fitzgerald v. Gamester*, 658 A.2d 1065, 1069 (Me. 1995).

The Law Court has adopted the following definition of negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Rand v. Bath Iron Works Corp.*, 2003 ME 122, ¶ 13, 832 A.2d 771, 774 (emphasis omitted) (quoting Restatement (Second) Torts § 552(a)(1)).

Plaintiffs allege that Ace performed a successful corporate test of the pilot model partnership that resulted in further purchases of Rent-A-Husband franchises by Ace franchises. They also allege that Ace "repeatedly expressed to plaintiffs its interest and then its intention of purchasing Rent-A-Husband outright, or alternatively, of obtaining a controlling financial interest in Rent-A-Husband;" that at least two meetings were held between Ace and Warren on the subject; that Ace knew of Plaintiffs' efforts in raising business capital through a private offering, and that Ace met with investors as well as the SBA for purposes of securing funding to facilitate the proposed buy-in or buy-out. Plaintiffs allege that Ace made false representations to them for the purpose of inducing them to act or refrain from acting.

8

Plaintiffs also claim that once Ace stopped the buy-in and buy-out negotiations, it continued to communicate with the Plaintiffs through funding, advice, counsel, and research and advertising assistance. Plaintiffs claim that these representations caused them to take "innumerable steps and/or measures in its business to facilitate the Ace buy-in or buy-out," and that when Ace decided not to pursue an ownership interest it caused a material change to the business and affected potential investors' interest, resulting in the Plaintiffs' loss of income and business opportunities.

Ace argues that the Plaintiffs' claim is barred because it is based on an alleged promise of future performance. Although claims for intentional and negligent misrepresentation both generally require that the defendant's misrepresentation be based on a past or existing fact, not merely a statement of opinion or a promise of future performance, in certain circumstances "'the relationship of the parties . . . may transform into an averment of fact that which under ordinary circumstances would be merely an expression of opinion.'" *Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 840 (Me. 1978) (citing *Shine v. Dodge*, 130 Me. 440, 444, 157 A. 318, 319 (1931)). No such relationship is alleged here.[4] Therefore, were the Plaintiffs alleging only misrepresentation of future performance, Ace's motion would likely be granted.

However, Plaintiffs allege that Ace intentionally or with reckless disregard or negligently supplied false information as to existing facts for Plaintiffs' guidance in their

---

[4] "In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Fortin v. Roman Catholic Bishop of Portland*, 2005 ME 57, ¶ 26, 871 A.2d 1208, 1218. A fiduciary duty is created when "one standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Bryan R. v. Watchtower Bible and Tract Soc'y of New York, Inc.*, 1999 ME 144, ¶ 15, 738 A.2d 839, 845 (quoting RESTATEMENT (SECOND) OF TORTS 874 (1965)). The Plaintiffs have not established sufficient facts supporting the allegation that a fiduciary relationship existed between Plaintiffs and Ace simply because there were ongoing business discussions. *See e.g., Clappison v. Foley*, 148 Me. 492, 497-99, 96 A.2d 325, 327-28 (1953) (noting that where the complaint does not demonstrate evidence of a fiduciary relationship, but instead only conventional business dealings, the motion to dismiss must be granted).

9

business transactions, for the purpose of inducing the Plaintiffs to act and/or refrain from acting, and which did induce such reliance. Accordingly, Ace's motion must be denied as to Counts VII and VIII.[5]

### Count IX: Intentional Infliction of Emotional Distress as to Plaintiff Warren

To prevail in an action for intentional infliction of emotional distress (IIED), a plaintiff must establish that:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [its] conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it.

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23. "A person acts recklessly if [he] knows or should know that [his] conduct creates an unreasonable risk of harm to another person and the unreasonableness of [his] actions exceeds negligence." *Id.*

Moreover, severe emotional distress "means emotional distress, created by the circumstances of the event, that is so severe that no reasonable person could be expected to endure it." *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 17, 834 A.2d 947, 952. Finally, in an IIED claim, the court determines "in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842, 847 (internal quotations omitted) (citations omitted).

Plaintiff Kaile Warren's IIED claim is based on the allegations of misrepresentations regarding the purchasing of an ownership interest in Rent-A-Husband and the alleged

---

[5] Ace's memorandum does not specifically assert that Plaintiffs' claim for intentional misrepresentation is insufficiently pleaded for purposes of M.R. Civ. P. 9(b). *See e.g.*, Diversified Foods, Inc. v. First Nat'l Bank, 605 A.2d 609, 615 (Me. 1992).

defamatory and false light statements Ace made about Rent-A-Husband. Ace's characterization of the circumstances as being insufficient may well prevail on a more fully developed factual record—after all, Plaintiff Warren's claim arises out of a business transaction or series of transactions rather than a situation that is by definition emotionally charged, such as a bereavement or a family conflict. *See Latremore v. Latremore*, 584 A.2d 626, 631 (Me. 1990) (finding that where the son was aware of the plaintiff parents' age and poor health, yet still made cruel remarks to them and sought to have his father committed, his conduct was extreme and outrageous); *Rubin v. Matthews International Corp.*, 503 A.2d 694, 699-700 (Me. 1986) (concluding that whether defendant's repeated misrepresentations to the plaintiff that the headstone she purchased would be delivered in time for the funeral of a loved one was extreme and outrageous conduct was an issue of fact for the jury).

On the other hand, Plaintiff Warren alleges much more than just the failure of a business plan—he asserts that Ace's actions contributed to his criminal prosecution and the destruction of his business. Viewed in a light most favorable to Plaintiff Warren, as it must be at this stage, Count IX states a cognizable claim for IIED. *Champagne*, 1998 ME 87, ¶ 16, 711 A.2d at 847 (citing *Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1998)).

Accordingly, Ace's motion is denied as to Count IX.

### Count X: Negligent Infliction of Emotional Distress as to Plaintiff Warren

In Count X Warren alleges a claim of negligent infliction of emotional distress (NIED).[6] There is no general duty to avoid negligently causing emotional harm to others. *Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25. In Maine, independent claims for NIED has been recognized only in so-called bystander situations or when a special relationship exists between the actor and the person emotionally harmed. *Id.* ¶ 19, 784 A.2d at 25-26. Plaintiff Warren

---

[6] This claim also may well amount to surplusage in light of the IIED and defamation claims as there can only be one recovery for the same loss or damage. *See Theriault v. Swan*, 558 A.2d 369, 372 (Me. 1989).

has not alleged bystander status nor has he sufficiently alleged the existence of a special relationship on which to base an independent claim for NIED. Ace's motion is granted as to Count X.

**Count XI: Vicarious Liability**

Ace seeks to dismiss Count XI on the grounds that vicarious liability is not a separate and distinct cause of action, "but a theory of imputation by which an employer may be held responsible for the tortious acts of its employees." *Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 14 (D. Me. 2005) (citations omitted). "Since vicarious liability is only meaningful insofar as it is asserted in support of a valid cause of action," *id.*, Count XI fails to state a cognizable independent and freestanding claim, and must be dismissed under Rule 12(b)(6). Plaintiffs can still seek to hold Ace vicariously liable for acts or omissions of its employees and agents on those claims against Ace that survive dismissal.

**Count XII: Punitive Damages**

Ace also seeks to dismiss Count XII on the grounds that punitive damages constitute a remedy, not a separate cause of action, and that even when viewing the facts of the complaint in a light most favorable to the plaintiff, they would not support an award of punitive damages.

Ace "is correct that punitive damages is not a separate and distinct cause of action under Maine law. Rather, it is a type of remedy." *Frank v. L.L. Bean, Inc.*, 352 F. Supp. 2d 8, 14 (D. Me. 2005) (citing *Southport Marine, LLC v. Gulf Oil Limited Partnership*, 234 F.3d 58, 64 (1st Cir. 2000); *Connors v. Town of Brunswick*, Civil No. 99-331-P-C, 2000 U.S. Dist. LEXIS 12253, *40 (D. Me. Aug. 16, 2000)). Accordingly, Count XII must be dismissed.

Plaintiffs have sought punitive damages in their prayers for relief, and may pursue an award of such damages on their IIED and intentional misrepresentation claims if the predicate showing of malice—express or implied—is made. *Tuttle v. Raymond*, 494 A.2d 1353 (Me. 1985);

12

*see also Morgan v. Kooistra,* 2008 ME 26, ¶ 29, 941 A.2d 447, 455.[7]

**Count XIII: Economic Damages For Restitution**

The Plaintiffs claim that the defendants "directly and/or proximately caused the actual damages to Plaintiffs of a Consent Judgment requiring Plaintiffs to pay a maximum of $1,994,657.08 in restitution to the State of Maine." Under Maine law, a restitution claim is premised on the equitable doctrine of unjust enrichment. Count XIII fails to allege that the alleged restitutionary payment to the State benefited or unjustly enriched Ace.

Thus, what purports to be an independent, freestanding claim in Count XIII is more properly characterized as an element of Plaintiffs' alleged damages under some of their other counts against Ace. Ace's motion is granted as to Count XIII, but Plaintiffs remain able to pursue recovery of the alleged restitution payment under at least some of their remaining theories of liability.

**Count XIV: Promissory Estoppel**

Ace has also moved to dismiss the Plaintiffs' promissory estoppel claim against it, alleging that it made no promises to the Plaintiffs, and even if it did, the promises alleged are barred by the Statute of Frauds because they could not have been performed in one year and they were not in writing.

The Law Court, in *Harvey v. Dow*, clarified that Maine has

---

[7]  Malice may be proven through evidence showing either that the party acted with ill will toward the claimant or that the party's conduct was so outrageous that malice can be implied. *Id.* at 1361. Thus, any lesser state of mind, such as gross negligence or recklessness, is insufficient to allow a punitive damages award. *Id.* at 1361-62 (noting that a gross negligence or reckless requirement "covers too broad and too vague an area of behavior, resulting in an unfair and inefficient use of the doctrine of punitive damages" that would "allow virtually limitless imposition of punitive damages," and would dull "the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct"). Accordingly, punitive damages are only available if a defendant acts with actual or implied malice. *Id.* Implied malice is defined as more than a "mere reckless disregard of the circumstances." *Id.* at 1361. The clear and convincing standard of proof aids in ensuring that punitive damages are not inappropriately awarded. *Batchelder v. Realty Res. Hospitality, LLC,* 2007 ME 22, ¶ 13, 914 A.2d 1116, 1124.

adopted the definition of promissory estoppel set out in the Restatement (Second) of Contracts, which states: A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires. Restatement (Second) of Contracts § 90(1) (1981); *Bracale v. Gibbs*, 2007 ME 7, ¶ 14, 914 A.2d 1112, 1115.

2008 ME 192, ¶ 11, 962 A.2d 322, 325. Although "promissory estoppel applies to promises that are otherwise unenforceable, [it] cannot be applied to avoid the statute of frauds requirement . . ." *Daigle Commer. Group, Inc. v. St. Laurent*, 1999 ME 107, ¶ 14, 734 A.2d 667, 672 (noting that promissory estoppel cannot be used to avoid the statute of frauds in employment contracts exceeding one year) (internal citations and quotations omitted); *see also Wells Fargo Home Mortg., Inc. v. Spaulding*, 2007 ME 116, ¶ 23, 930 A.2d 1025, 1030. Plaintiffs assert that Ace's alleged promises are not subject to the Statute of Frauds by alleging the doctrine of partial performance, specifically that Rent-A-Husband, in reliance on the promises made by Ace, gave up other business opportunities.

Part performance in reliance on an otherwise unenforceable contract can remove the contract from the ambit of the Statute of Frauds "if it is established that the party seeking enforcement, in reasonable reliance on the contract and on the continuing assent of the party against whom enforcement is sought, has so changed his position that injustice can be avoided only by specific enforcement." *Gage v. Stevens*, 1997 ME 88, ¶ 14, 696 A.2d 411, 416, *quoting* RESTATEMENT (SECOND) OF CONTRACTS § 129 (1981); *see Busque v. Marcou*, 147 Me. 289, 294-95, 86 A.2d 873 (1952).

It is doubtful that the Plaintiffs can recover damages against Ace, because their remedy is likely limited to the benefit of the bargain or their expenditures incurred in reliance, as opposed to the value of alleged lost opportunities elsewhere. However, because Plaintiffs have alleged reasonably specific promises by Ace and detrimental reliance by them, the allegations of

Count XIV could, if proved, entitle the Plaintiffs to relief of some kind. For that reason, Ace's motion is denied as to Count XIV.

For the reasons stated it is ORDERED AS FOLLOWS:

Plaintiffs' Motion to Amend is granted except as to Count X for negligent inflection of emotional distress, Count XI for vicarious liability, Count XII for punitive damages, and Count XIII for economic damages for restitution. Defendant Ace Hardware Corp.'s Motion to Dismiss is granted as to Counts X, XI, XII and XIII and is otherwise denied.

Pursuant to M.R. Civ. P. 79, the clerk shall incorporate this order into the docket by reference.

Dated: October 25, 2011

A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 10.25.11
Copies sent via Mail ___ Electronically ✓

15

# BUSINESS AND CONSUMER COURT

## Kaile R. Warren, Jr. et al v. Preti, Flaherty, Beliveau & Pachios, LLC et al
## BCD-CV-2011-28

*Counsel of Record*

| Attorney Name | Party Name |
| --- | --- |
| Daniel Lilley, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| Tina Nadeau, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| | |
| John Aromando, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Mark Porada, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| | |
| Peter DeTroy, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Russel Pierce, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| | |
| Thimi Mina, Esq. | Ace Hardware Corp (Defendant) |
| Samuel Moulthrop, Esq. | Ace Hardware Corp (Defendant) |

STATE OF MAINE
Cumberland, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11-28
AHM - CUM - 10/25/2011

)
KAILE R. WARREN, JR., )
RENT-A-HUSBAND LLC, )
RENT-A-HUSBAND ENTERPRISES, )
LLC, and KW ENTERPRISES, INC., )
)
Plaintiffs, )
)
v. )
)
PRETI, FLAHERTY, BELIVEAU & )
PACHIOS, LLC, MARCUS, CREGG & )
MISTRETTA, P.A., and ACE )
HARDWARE CORP., )
)
Defendants )
)

## ORDER ON DEFENDANT ACE HARDWARE CORPORATION'S
## MOTION TO SEVER

Defendant Ace Hardware Corporation (Ace) moves, pursuant to M.R. Civ. P. 20 and 21, to sever the Plaintiffs' claims relating to it from those relating to the other two Defendants, Preti, Flaherty, Beliveau & Pachios, LLC (Preti) and Marcus, Clegg & Mistretta, P.A. (MCM). Plaintiffs Kaile R. Warren, Jr., Rent-A-Husband LLC, Rent-A-Husband Enterprises, LLC, and KW Enterprises, Inc. oppose the motion, but neither Preti nor MCM objects to the motion to sever.[1] The court heard oral argument on the motion on October 12, 2011.

### FACTUAL BACKGROUND

A motion to sever for misjoinder may be brought at any point in the action. *See* M.R. Civ. P. 21. At this early stage in the litigation, the only alleged facts that have been presented to the court

---

[1] Preti has requested that should the court grant the motion to sever, that the court also issue a protective discovery order to prohibit duplicative discovery in the two proceedings.

upon which to base its decision are those in the Second Amended Complaint. Those allegations are summarized below, initially as to the law firm defendants and then as to Ace.

*Factual Allegations Pertaining to Preti and MCM*

Plaintiff Kaile Warren is the majority owner and controller of the Plaintiff corporate entities, Rent-A-Husband LLC, Rent-A-Husband Enterprises, LLC, and KW Enterprises, Inc. (Corporate Plaintiffs). (Compl. ¶ 1.)[2] In approximately April 2000, Preti began representing the Corporate Plaintiffs as corporate counsel and Warren as personal counsel. (Compl. ¶¶ 11, 13.) In 2002, after allegedly following advice from counsel, Plaintiffs began to raise business capital for Rent-A-Husband through a private offering that was designed and overseen by Preti. (Compl. ¶¶ 24-25.) Promissory notes and subscription agreements were issued through Plaintiffs Rent-A-Husband LLC and KW Enterprises, Inc. as part of the private offering. (Compl. ¶ 28.)

Plaintiffs allege that despite organizing and designing the private offering, Preti failed to ensure that the Rent-A-Husband private offering complied with all state and federal securities laws, to advise Plaintiffs to properly register promissory notes in compliance with the Maine Uniform Securities Act, to inform the Plaintiffs of the requirements for securities registration and licensing. (Compl. ¶¶ 28-31, 33-35.) After the SBA, with whom Plaintiffs were negotiating to obtain funding for the purpose of facilitating buy-in, buy-out of Rent-A-Husband by Ace, called into question the legality of the private offering in 2007 or 2008, Preti withdrew from further legal representation of Plaintiffs effective May 6, 2008. (Compl. ¶¶ 37-38, 44.)

Preti referred Plaintiffs to MCM, who, in June 2008, began representing the Plaintiffs as their corporate counsel and securities investigation counsel and acted as personal counsel to Warren regarding corporate matters, the securities investigation, and the eventual criminal case, which the

---

[2] All citations are to the Second Amended Complaint filed with Plaintiff's motion to amend, which is granted in a separate order.

State of Maine Office of Securities began investigating in the summer of 2008. (Compl. ¶¶ 46, 56-58.)

Plaintiffs allege that MCM inappropriately advised the Plaintiffs that Warren could properly and lawfully issue personal promissory notes to raise business capital for Rent-A-Husband. (Compl. ¶ 74.) Plaintiffs also allege that MCM inappropriately advised them to waive their attorney-client privilege with Preti and waive their Fifth Amendment rights. Plaintiffs also assert that MCM advised them to produce voluntarily information and records to the State of Maine that MCMC had not reviewed beforehand, despite knowing that these statements could be used against the Plaintiffs. (Compl. ¶¶ 48-49, 66, 68, 70-71.) Plaintiffs state that deficient legal advice led to the civil enforcement and criminal actions being brought. (Compl. ¶¶ 75, 77.) In January 2010, MCM moved to withdraw from further legal representation of the Plaintiffs based on a conflict of interest. (Compl. ¶ 78.)

As a result of the securities investigation, on December 11, 2009, plaintiff Warren was indicted for criminal violations of law stemming from the Rent-A-Husband private offering. (Compl. ¶ 51.) While the criminal matter was still pending the State of Maine filed a civil enforcement action against the Plaintiffs alleging securities violations. (Compl. ¶ 52.) On February 23, 2011, a consent judgment was entered into with the Plaintiffs, pursuant to which the criminal prosecution was dismissed with prejudice and Plaintiffs agreed to pay restitution to the State of Maine for the Rent-A-Husband investments of $1,994,657.08 plus interest. (Compl. ¶¶ 54-55.)

*Facts Pertaining to Ace*

Between 2002 and 2008, Plaintiffs had a profitable partnership with Ace of Rent-A-Husband franchises within Ace stores in Maine, New Hampshire, and Massachusetts. (Compl. ¶¶ 79-82, 85.) Plaintiffs claim that Ace repeatedly expressed to Plaintiffs its interest and intention of purchasing Rent-A-Husband outright or, alternatively, of obtaining a controlling financial interest in it. (Compl.

3

¶ 87.) In November 2007, and again in January 2008, Ace met with Warren to discuss the potential buy-out or buy-in. (Compl. ¶ 88.)

Plaintiffs claim that Ace knew or reasonably should have known that Plaintiffs were continuing to raise business capital through a Rent-A-Husband private offering. (Compl. ¶ 90.) Ace met with a number of Rent-A-Husband investors, and negotiated some investors for Rent-A-Husband. (Compl. ¶ 91.) Ace also spoke with individuals at the SBA regarding the proposed partnership to help secure funding for Rent-A-Husband, and to facilitate the buy-in or buy-out of Rent-A-Husband. (Compl. ¶ 92.)

In March of 2008, Plaintiffs claim that Ace suddenly put the ownership stake of Ace in Rent-A-Husband on hold. (Compl. ¶ 93.) Although the potential buy-in or buy-out was suspended, Ace continued to stay in contact with the Plaintiffs and continued to state that the partnership would still happen. (Compl. ¶ 94.) Ace did this by issuing a letter acknowledging the success of the partnership between Rent-A-Husband and Ace, advising and encouraging Ace franchise stores to buy Rent-A-Husband franchises, and by providing Plaintiffs with funding, advise, counsel, research, and advertising assistance. (Compl. ¶ 95.) Plaintiffs claim they took innumerable steps to facilitate the buy-in or buy-out based on the repeated representations by Ace, but Ace never purchased an ownership stake in Rent-A-Husband although its franchise stores continues to have Rent-a-Husband franchises. (Compl. ¶¶ 97-99.) Plaintiffs allege that the issues regarding the legality of the private offering, the withdrawal of Preti as Plaintiffs' counsel, and the securities investigation all affected Ace's interest in obtaining an ownership stake in Rent-A-Husband. (Compl. ¶¶ 103-105.)

Plaintiffs claim that on or about October 2009, Ace made false statements to the media concerning the scope and extent of its business relationship with Plaintiffs, Ace's interest in obtaining an ownership stake in Rent-A-Husband, and Ace's knowledge of Rent-A-Husband investors. (Compl. ¶ 108.) Plaintiffs assert that the false statements further fueled the securities

4

investigation that resulted in criminal indictments and a civil enforcement action. (Compl. ¶ 109.) Plaintiffs also claim that during the pendency of the criminal prosecution, Ace made false statements to the Maine Securities Investigators and the Maine Attorney General's Office regarding the scope and extent of the relationship between Ace and Rent-A-Husband, the success of the tested pilot partnership, and Ace's interest in obtaining an ownership stake in Rent-A-Husband. (Compl. ¶ 110.) Plaintiffs claim this further fueled the securities investigation, criminal prosecution, and civil prosecution of Plaintiffs. (Compl. ¶ 110.)

## PROCEDURAL BACKGROUND

Plaintiffs initiated this litigation in Cumberland County Superior Court on March 22, 2011, by filing a thirteen-count complaint alleging: 1) professional negligence (Count I) and breach of fiduciary duty (Count II) against Preti; 2) professional negligence (Count III) and breach of fiduciary duty (Count IV) against MCM; 3) defamation (Count V), false light (Count VI), negligent misrepresentation (Count VII), and intentional misrepresentation (Count VIII) against Ace; and 4) intentional infliction of emotional distress (Count IX), negligent infliction of emotional distress (Count X), vicarious liability (Count XI), punitive damages (Count XII), and "economic damages for restitution" (Count XIII) against all three defendants. On April 20, 2011, Plaintiffs amended their complaint and added a claim for promissory estoppel (Count XIV) against Ace. Both Preti and MCM filed answers to the First Amended Complaint. The case was assigned to Justice Wheeler.

Ace did not file an answer to the First Amended Complaint; instead, on May 2, 2011, Ace filed a M.R. Civ. P. 12(b)(6) motion to dismiss all claims against it along with its motion to sever. Justice Wheeler heard oral argument on the motion to dismiss and the motion to sever on August 4, 2011. On August 12, 2011, Plaintiffs moved to amend their complaint for a second time. Before any ruling on the pending motions could issue, the case was accepted for transfer to the Business

5

Court on September 14, 2011. The court granted Plaintiffs' motion to amend in an order dated October __, 2011.

## DISCUSSION

Ace seeks, pursuant to M.R. Civ. P. 20 and 21, to sever the claims against it from the claims brought against Preti and MCM, essentially arguing that they were misjoined in the litigation. (*See generally* M. Sever.) Broadly, Ace argues that the basis for the claims against Preti and MCM are unrelated to the claims against Ace and thus joinder was improper. Ace has indicated throughout the pleadings that it intends to remove the case to federal district court should the severance be granted, and thus has requested a ruling on the motion to sever prior to the motion to dismiss. Plaintiffs counter that the Complaint sets forth facts establishing that Plaintiff Warren and the Corporate Plaintiffs began a successful business venture with Ace, Preti and MCM were hired to help grow that business through raising capital, and over the same time period and through various means, the Defendants together played a substantial role in destroying Plaintiffs' business enterprise.[3]

Pursuant to M.R. Civ. P. 21, "[p]arties may be dropped or added by order of the court on motion of any party . . . at an stage of the action and on such terms as are just. Any claim against a party may be severed and presented separately." Because the Maine rule regarding severance is essentially identical to the federal rule,[4] it is proper for the court to consider constructions of the

---

[3] Plaintiffs also argue that Ace is a necessary party pursuant to M.R. Civ. P. 19, because Ace, Preti, and MCM have caused a total, indivisible injury to the Plaintiffs, that culminated from all of the Defendants' conduct. Even were that the case, it would necessarily mean that Ace is a necessary party pursuant to M.R. Civ. P. 19. Even presuming some form of joint liability, joint tortfeasors are not indispensable parties under Rule 19. *See Lebel v. Regan*, 192 A.2d 28, 30-31, 159 Me. 300, 304 (1963) (cited in 2 C. Harvey, MAINE CIVIL PRACTICE § 19.1 at 560 n.12 (3d ed. 2011)).

[4] The federal rule on severance provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

federal rule to aid in construing and analyzing the parallel Maine provision. *See Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676, 680. Severance pursuant to Rule 21 provides a mechanism for dropping defendants when the requirements of permissive joinder under Rule 20 have not been met. *See McCormick v. Festiva Dev. Grp., LLC*, 269 F.R.D. 59, 60 (D. Me. 2010); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1683 at 475 (3d ed. 2001). Thus to succeed on a motion to sever, Ace must show they were improperly joined in this matter.

The Maine Rules of Civil Procedure promote the free joinder of claims and parties to effectuate "the just, speedy and inexpensive determination of every action. M.R. Civ. P. 1; *see also* M.R. Civ. P. 18, 20; 1 Field, McKusick, & Wroth, *Maine Civil Practice* § 18.1 at 359-60 (2d ed. 1970). The rule on permissive joinder of parties provides:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief within the subject-matter jurisdiction of the court in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all defendants will arise in the action.[5]

M.R. Civ. P. 20(a) (emphasis added). The so-called "same transaction prong" and the "common question prong" of Rule 20 are cumulative requirements. *See* 7 Federal Practice and Procedure § 1653 at 403-04.

In its motion to sever, Ace argues that Plaintiffs have not shown that the claims against them do not arise out of the same transaction or involve common questions of law or fact as those claims alleged against Preti and MCM. Although Ace attacks both prongs of permissive joinder, it is clear that at a minimum there are common questions of fact in the assessment of damages, as Plaintiffs seek similar types of damages from Ace, Preti, and MCM and allege that all Defendants caused a

---

[5] The federal rule on permissive joinder is nearly identical to the Maine rule; it allows for the joinder of defendants in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

single indivisible harm to the Plaintiffs. *See Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 498 (S.D. W. Va. 2009) (explaining how apportionment of damages between defendants is a common question of fact). Thus, whether or not joinder is proper is based on the same transaction prong.

As noted, for permissive joinder, the "right to relief" must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." M.R. Civ. P. 20(a). Ace posits in its memo that "whether separate transactions or occurrences constitute a series is determined by examining whether there is some systemic pattern or logical relation between the tortious events." (M. Sever 3 (quoting *Gruening v. Sucic*, 89 F.R.D. 573, 574 (E.D. Penn. 1981).) Ace argues the complaint alleges distinct torts committed by different defendants at different times. The test, however, is not based on the nature of the cause of action; the test is whether the right to relief arises out of the same series of transactions or occurrences. *See Jonas v. Conrath*, 149 F.R.D. 520, 523 (S.D. W. Va. 1993) (refusing to sever a malpractice claim against an optometrist from a breach of contract claim for non-coverage against the insurer when the incidents for each right to relief arose during the same time period); *Pepper v. SRO Concerts, Inc.*, No. 90 Civ. 5902 (MBM), 1992 U.S. Dist. LEIXS 2204, at *3-*5 (E.D.N.Y. Feb. 24, 1992) (refusing to sever legal malpractice claims brought by plaintiff clients and the attorneys' counterclaims for unpaid fees from claims brought against various other defendants for breach of employment agreements which the attorneys had negotiated and drafted). *But see Gruening*, 89 F.R.D. at 573 (concluding that distinct torts committed at distinct times warranted severance of parties); *Pena v. McArthur*, 889 F. Supp. 403, 406 (E.D. Cal. 1994) (severing claims against an insurer for breach of fiduciary duty from claims against an uninsured motorist for personal injury based on the reasoning in *Gruening*).

In the present case, Plaintiffs allege that Preti and MCM were involved in advising Plaintiffs on how to raise capital in order to effectuate a buy-out with Ace, through corporate promissory

8

notes and personal promissory notes. Plaintiffs allege that Ace knew about Plaintiffs' attempts to raise capital, and used those attempts while meeting with investors of Rent-A-Husband and relied on the proceeds for its own self-promotion. Plaintiffs further allege that the issues regarding the legality of the private offering, the withdrawal of Preti as Plaintiffs' counsel, the legality of the personal promissory notes, and the securities investigation all affected Ace's interest in obtaining an ownership stake in Rent-A-Husband.

The court is cognizant that the only facts upon which it can make its decision are those in the complaint, allegations that have been untested and unchallenged as of yet. The court also notes that the claims for breach of fiduciary duty and legal malpractice brought against Preti and MCM make no mention of Ace at all, focusing solely on the allegedly inadequate advice that was provided to Plaintiffs. Read alone, those counts have nothing in common with any of the claims brought against Ace. Plaintiffs make much of the overlap in time and the effect of the civil and criminal proceedings, but it is less than clear to the court those facts give rise to Plaintiffs' causes of action against Ace or that these tortious actions are even logically related. The legal proceedings could be considered just a circumstance that forms the basis of knowledge for Ace's actions, or it could be considered an essential part of the privacy torts and misrepresentation claims alleged against Ace.

Nevertheless, based on these allegations in the complaint, the court cannot say at this point in the proceedings that the events giving rise to Plaintiffs right to relief do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." M.R. Civ. P. 20(a).

The court must thus deny Ace's motion to sever without prejudice. The parties are encouraged to conduct discovery in a manner that will expediently and fully explore the connection between the actions of Preti, MCM, and Ace, as Ace has indicated its intent to move for severance again with a more fully developed evidentiary record.

9

Based on the foregoing, Ace's motion to sever is DENIED without prejudice. Pursuant to M.R. Civ. P. 79(b), the clerk is hereby directed to incorporate this Order and Judgment by incorporation in the docket.

Dated October 25, 2011

A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 10.25.11
Copies sent via Mail __ Electronically ✓

10

## BUSINESS AND CONSUMER COURT

# Kaile R. Warren, Jr. et al v. Preti, Flaherty, Beliveau & Pachios, LLC et al
## BCD-CV-2011-28

*Counsel of Record*

| Attorney Name | Party Name |
|---|---|
| Daniel Lilley, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| Tina Nadeau, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| John Aromando, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Mark Porada, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Peter DeTroy, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Russel Pierce, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Thimi Mina, Esq. | Ace Hardware Corp (Defendant) |
| Samuel Moulthrop, Esq. | Ace Hardware Corp (Defendant) |

STATE OF MAINE
Cumberland, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11-28

)
KAILE R. WARREN, JR. et als.       )
                                    )
            Plaintiffs             )
                                    )
v.                                  )
                                    )
PRETI, FLAHERTY, BELIVEAU &        )
PACHIOS, LLC,  et als.             )
                                    )
            Defendants             )

## ORDER ON DEFENDANTS' JOINT MOTION TO COMPEL AND PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Defendants' Joint Motion to Compel Documents Reflecting Communications Between Attorney Lilley and Assistant Attorney General Colleran, and Plaintiffs' Motion for Protection are before the court. The court elects to decide both motions without oral argument, *see* M.R. Civ. P. 7(b)(7).

The subject matter of both motions is a series of communications between Plaintiffs' counsel and one or more attorneys in the Office of the Maine Attorney General in the context of now-concluded criminal and civil cases instituted by the State against Plaintiffs in the Cumberland County Unified Criminal Docket and the Cumberland County Superior Court. *State v. Warren,* Docket No. CUMCD-09-9716; *State v. Rent-A-Husband et als.,* Docket No. CUMSC-CV-11-07.

The materials at issue are listed in a "privilege log" attached as Exhibit A to the Plaintiffs' Motion for Protection. In that log, the disputed materials are listed by Bates number, all with the prefix of KWC.[1]

---

[1] The privilege log also includes documents withheld on the ground of attorney-client privilege—all assigned Bates numbers with a KWE prefix—that are not at issue and therefore are excluded from the scope of this Order.

The following points are clearly established:

- All of the materials are communications between Plaintiffs' counsel and the counsel for the State in the two cases[2]

- The State and the Plaintiffs were adverse parties (parties on opposite sides of the claims or charges at issue in the cases), as opposed to being co-parties with similar or identical interests

- All of the communications were prepared in anticipation of, or in the course of litigation or for trial, in the civil and criminal cases between the State and the Plaintiffs

- The sole ground asserted by Plaintiffs in their Motion for Protection for objecting to disclosure of the communications and related materials is the provision in Rule 26(b)(3) of the Maine Rules of Civil Procedure that affords protection against disclosure of an attorney's work product

Plaintiffs contend that because all of the materials at issue were prepared in anticipation of litigation or trial in one or both of the two prior cases within the meaning of Rule 26(b)(3), the Defendants are required to make a showing of "substantial need" for them, within the meaning of the rule. Plaintiffs contend Defendants have failed to make the required showing and that, in any case, the court should preclude discovery because the requested materials contain "mental impressions, conclusions, opinions or legal theories" of Plaintiffs' counsel and therefore constitute attorney work product.

Defendants counter that the "substantial need" and work product provisions of Rule 26(b)(3) do not apply because all of the disputed materials were disclosed by Plaintiffs' counsel to counsel for an adverse party. They also contend that the attorney work product does not apply in

---

[2] The court agrees with the Defendants that Plaintiffs cannot assert an attorney work product objection as to work product of the State's counsel, so only the work product of Plaintiffs' own counsel is at issue.

2

any event because the disputed material was all prepared in connection with litigation other than the present case.

Neither side has identified any Law Court or other Maine court precedent directly on point, but both rely on federal court precedent addressing the counterpart federal rule, Fed. R. Civ. P. 26(b)(3). The Law Court as well has relied on federal authority as guidance in analyzing Rule 26(b)(3). *See Boccaleri v. Maine Medical Center,* 534 A.2d 671, 672-73 (Me. 1987). This court likewise looks to federal authority for guidance.

> "The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy "with an eye toward litigation," free from unnecessary intrusion by his adversaries. Analysis of one's case "in anticipation of litigation" is a classic example of work product and receives heightened protection under Fed. R. Civ. P. 26(b)(3).
>
> *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir. 1998), *quoting NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154(1975); *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947).

However, as the United States Supreme Court has held, "[t]he privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *United States v. Nobles,* 422 U.S. 225, 239 (1975).

Based on logic as well as the clear weight of authority, this court concludes that when an attorney voluntarily communicates the attorney's "mental impressions, conclusions, opinions or legal theories" to opposing counsel in litigation, that disclosure operates to waive whatever Rule 26(b)(3) protection might otherwise attach to that communication. *See. e.g., United States v. Massachusetts Institute of Technology,* 129 F.3d 681, 687 (1ˢᵗ Cir. 1997), *citing Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1428-29 (3d Cir.1991); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir.1993); *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371-75 (D.C.Cir.1984); *In re Martin Marietta Corp.,* 856 F.2d 619, 625 (4th Cir.1988), *cert.*

3

*denied*, 490 U.S. 1011 (1989); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846-47 (8th Cir.1988). *See also* 8 C. Wright, A. Miller & R. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2024, at 368-69 (1994) (citing cases).

"Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement." *Grumman Aerospace Corp. v. Titanium Metals Corp. of America,* 91 F.R.D. 84, 90 (E.D.N.Y.1981); *see also Chubb Integrated Systems Ltd. v. National Bank,* 103 F.R.D. 52, 67 (D.D.C.1984).

Here, all of the materials at issue either were, or were included in, communications between Plaintiffs' counsel and opposing counsel in two cases in which the State and the Plaintiffs were plainly adverse. The court concludes that such disclosure operates to waive any basis for objection to discovery under the Rule 26(b)(3) "substantial need" and attorney work product provisions and in fact removes the materials in question from within the ambit of Rule 26(b)(3).

This conclusion makes it unnecessary, at least in this Order, to address the Defendants' alternate argument that Rule 26(b)(3) does not protect the materials at issue because they were generated in anticipation of, or during, different litigation. *See, e.g. Hunnewell, Inc. v. Piper Aircraft Corp.,* 50 F.R.D. 117, 119 (M.D. Pa. 1970); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 207 F. Supp. 407, 410 (M.D. Pa. 1962). The Plaintiffs have a reasonable argument that the connection between the State's claims and charges in the prior civil and criminal cases on the one hand and their claims in this case on the other hand is sufficient to extend the protection of Rule 26(b)(3) to their counsels' work product as to which that protection has not been waived, even though the prior litigation is concluded. *See Federal Trade Commission v. Grolier, Inc.,* 462 U.S. 19, 28 (1983) (in Freedom of Information Act appeal, "attorney work product is exempt from mandatory disclosure without regard to the status of the litigation for which

4

it was prepared"). *See also Philadelphia Elec. Co. v. Anaconda American Brass Co.,* 275 F. Supp. 146, 148 (E.D. Pa. 1967), *citing Republic Gear Company v. Borg-Warner Co.,* 381 F.2d 551 (2d Cir. 1967). However, the court need not and does not decide the broader question of how Rule 26(b)(3) applies to Plaintiffs' counsels' work product materials beyond those that have been communicated to opposing counsel in the prior cases.

The 6-page privilege log filed as Exhibit A on its face indicates that all of the documents at issue—assigned Bates numbers with a KWC prefix—were communications between Plaintiffs' counsel and one or more representatives of the Office of the Attorney General and, in some cases, others. On their face therefore, all of the disputed materials are outside the protection of Rule 26(b)(3) based on waiver by means of voluntary disclosure to opposing counsel. It is thus unnecessary for the court to conduct any *in camera* review of the enumerated materials.

IT IS ORDERED AS FOLLOWS:

(1) Defendants' Joint Motion to Compel is hereby granted. Plaintiffs' Motion for Protection is hereby denied. All documents listed with a KWC Bates number prefix in the privilege log attached to Plaintiffs' motion as Exhibit A shall be disclosed by Plaintiffs' counsel forthwith to the Defendants' counsel within 10 days of this Order.

Pursuant to M.R. Civ. P. 79(b), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated 4 January 2012

_____
A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 1.4.2012
Copies sent via Mail ___ Electronically ✓

5

# BUSINESS AND CONSUMER COURT

## Kaile R. Warren, Jr. et al v. Preti, Flaherty, Beliveau & Pachios, LLC et al
## BCD-CV-2011-28

### *Counsel of Record*

| Attorney Name | Party Name |
|---|---|
| Daniel Lilley, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| Tina Nadeau, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| John Aromando, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Mark Porada, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Peter DeTroy, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Russel Pierce, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Thimi Mina, Esq. | Ace Hardware Corp (Defendant) |
| Samuel Moulthrop, Esq. | Ace Hardware Corp (Defendant) |

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-11-28
AMH - CuM - 3/12/2012

KAILE R. WARREN, JR.,
RENT-A-HUSBAND LLC,
RENT-A-HUSBAND ENTERPRISES,
LLC, and KW ENTERPRISES, INC.,

      Plaintiffs,

v.

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLC, MARCUS, CLEGG &
MISTRETTA, P.A., and ACE
HARDWARE CORPORATION,

      Defendants

## ORDER ON ACE HARDWARE CORPORATION'S
## SPECIAL MOTION TO DISMISS

Ace Hardware Corporation (Ace) moves to dismiss Plaintiffs' claims for defamation (Count V) and false light (Count VI) pursuant to Maine's anti-SLAPP statute, 14 M.R.S. § 556 (2011). Plaintiffs oppose the motion on two grounds: first, the statements of ACE on which those claims are not protected under the anti-SLAPP statute; and second, Ace's statements had no "reasonable factual support or any arguable basis in law." 14 M.R.S. § 556. By agreement of the parties, the court did not hold oral argument on Ace's motion.

*FACTUAL BACKGROUND*

Viewed in the light most favorable to Ace as the moving party, the pleadings and affidavits reveal the following facts. *See Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 18, 772 A.2d 842. In 2009, in response to media inquiries regarding Rent-A-Husband, Ace issued a

1

media statement regarding its relationship with Plaintiffs.[1] (Boniface Aff. ¶ 3.) The media statement provided:

> A handful of independently owned and operated Ace stores have or have had relationships with Rent-A-Husband, which is just one of a number of do-it-for-me service providers with whom select Ace stores across the country have partnered.
>
> For six months in 2003, the Ace Hardware Corporation worked with Rent-A-Husband for it to provide certain services to customers of several Ace stores located in Maine and New Hampshire. Over the next several years, Ace had a series of informal discussions with Mr. Warren regarding a potential ownership stake in Rent-A-Husband, but no formal agreement or agreement in principle was ever reached. In early 2008, Ace discontinued these and other conversations with Mr. Warren for a number of business reasons.
>
> Ace has no knowledge of Mr. Warren's conversations with his investors or lenders.

(Boniface Aff. Exh. 1.) On October 21, 2009, September 10, 2009, and September 4, 2009, three separate articles were published by three separate publications regarding Plaintiffs' business relationships with Ace. (Boniface Aff. ¶¶ 4-6; *see* Boniface Aff. Exhs. 2-4.)

On or about November 2, 2009, the Maine State Office of Securities served a subpoena for documents on Ace, commanding production of documents in Ace's possession pertaining to Ace's business relationship or prospective business relationship with Plaintiffs. (Bohl Aff. ¶ 3; *see* Bohl Aff. Exh. A at 3.) Ace produced the documents on November 19, 2009, and December 15, 2009. (Bohl Aff. ¶ 3.)

In December of 2009, Ace was advised that Plaintiff Warren had been indicted for criminal offenses by a grand jury in Maine in the matter of *State v. Kaile R. Warren, Jr.*, docket number CUM-CR-09-9716. (Bohl Aff. ¶ 4.) Following return of the indictment, the Office of Securities sought the testimony of five Ace employees: John Venhuizen, David Sonnen, Mark Riebe, Jay Huebner, and Dale Fennel. (Bohl Aff. ¶ 5.) The unsworn interviews were

---

[1] It is not clear when Ace issued the media statement, but the court presumes it occurred at or near the time of the criminal and civil investigations of Plaintiff Kaile R. Warren.

conducted via telephone on January 14, 2010, January 19, 2010, and January 22, 2010. (Bohl Aff. ¶ 5.) Four of these employees were designated as trial witnesses for the criminal case. (Bohl Aff. ¶ 6.) All contact between Ace and the Office of Securities was initiated by the state agency. (Bohl Aff. ¶¶ 7-8.)

While the criminal matter was still pending the State of Maine filed a civil enforcement action against the Plaintiffs alleging securities violations. (Compl. ¶ 52.) On February 23, 2011, a consent judgment was entered into with the Plaintiffs, pursuant to which the criminal prosecution was dismissed with prejudice and Plaintiffs agreed to pay restitution to the State of Maine for the Rent-A-Husband investments of $1,994,657.08 plus interest. (Compl. ¶¶ 54-55.)

Plaintiffs initiated this litigation in Cumberland County Superior Court on March 22, 2011, which included claims against Ace for defamation (Count V) and false light (Count VI) based on the foregoing statements to the media and the Office of Securities. Pursuant to this court's Order on Motion to Modify of Ace Hardware, dated November 29, 2011, the court allowed Ace to file a special motion to dismiss pursuant to 14 M.R.S. § 556.

## DISCUSSION

Maine's anti-SLAPP statute (Strategic Lawsuit Against Public Participation), 14 M.R.S. § 556, "is designed to guard against meritless lawsuits brought with the intention of chilling or deterring the free exercise of the defendant's First Amendment right to petition the government by threatening would-be activists with litigation." *Schelling v. Lindell*, 2008 ME 59, ¶ 6, 942 A.2d 1226. The statute provides for a special motion to dismiss when a claim asserted against the moving party is "based on the moving party's exercise of the moving

3

party's right to petition under the Constitution of the United States or the Constitution of Maine."[2]  14 M.R.S. § 556.

The defendant carries the initial burden of showing that the claims to which the anti-SLAPP motion is directed are based upon "petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities."[3]  *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 943 (Mass. 1998).  The "focus solely is on the conduct complained of, and, if the *only* conduct complained of is petitioning activity, then there can be no other substantial basis for the claim."  *The Cadle Co. v. Schlichtmann*, 859 N.E.2d 858, 864 (Mass. 2007) (quotation marks omitted).  If the moving party meets this burden, then "the party against whom the special motion is made" must show "that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law" and resulted in "actual injury" to the non-moving party.  14 M.R.S. § 556; *accord Schelling*, 2008 ME 59, ¶ 7, 942 A.2d 1226.

The court must first determine whether the Plaintiffs' claims at issue have as their only substantial basis petitioning activity by Ace that is protected by the statute.[4]  Section 556 defines the exercise of the right to petition as follows:

> any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental

---

[2] The First Amendment to the United States Constitution provides, in relevant part:  "Congress shall make no law . . . abridging . . . the right of the people to peaceably assemble, and to petition the government for a redress of grievances."  Article I, section 15 of the Maine Constitution provides:  "The people have a right at all times in an orderly and peaceable manner to assemble to consult upon the common good, to give instructions to their representatives, and to request, of either department of the government by petition or remonstrance, redress of their wrongs and grievances."

[3] As the parties point out, Massachusetts's anti-SLAPP statute is nearly identical to Maine's, and the Law Court has relied upon Massachusetts cases in interpreting Maine's statute.  *See Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶¶ 15, 17-20, 772 A.2d 842; *cf. Copp v. Liberty*, Mem-10-2 (Feb. 2, 2010).

[4] Because none of the parties has argued that the Attorney General's Office and the Office of Securities are not executive bodies, the court will assume that both are executive bodies for purposes of the anti-SLAPP statute.

4

proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

14 M.R.S. § 556; *accord, Schelling*, 2008 ME 59, ¶ 11, 942 A.2d 1226 (characterizing the "right to petition" as defined "very broadly" under the anti-SLAPP statute).[5]

In subsequent cases, the "right to petition" protected by the statute has included administrative appeals by abutting landowners from decisions of planning boards and a state environmental agency, *see Morse Bros, Inc.*, 2001 ME 70, ¶¶ 3-6, 19, 772 A.2d 842, statements made by a citizen and his attorney to the press regarding a contractual dispute on a public construction project, *see Maietta Constr., Inc. v. Wainwright*, 2004 ME 53, ¶¶ 2-4, 847 A.2d 1169, and a letter to the editor of a state legislator regarding a bill recently considered by the Maine Legislature, *see Schelling*, 2008 ME 59, ¶¶ 13-14, 942 A.2d 1226.

Ace asserts that because all the statements made in the interviews were part of ongoing investigations, those statements fall within "any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding." 14 M.R.S. § 556. Ace also asserts that the media statement falls within "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body" because the statement was "reasonably likely to enlist public participation" and garner support for Ace's position. *Id.; see also Maietta Constr., Inc.*, 2004 ME 53, ¶ 23, 847 A.2d 1169 (Calkins, J., dissenting).

---

[5] The Massachusetts Supreme Judicial Court has stated that the right to petition may include: "reporting violations of law, writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations." *Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 940 (Mass. 1998) (quotation marks omitted).

Plaintiffs counter that Ace was not engaged in petitioning activity at all because Ace was not seeking redress for grievances of its own. Plaintiffs characterize Ace's interview statements as those of witnesses responding to questions, not activists initiating a discussion, and Ace's media statement as being aimed at dissociating Ace from the Plaintiffs. Plaintiffs suggest that at no time was Ace "petitioning" a governmental body to take action. Plaintiffs rely upon a series of Massachusetts Supreme Judicial Court cases in which the Massachusetts high court has limited the scope of the Massachusetts anti-SLAPP statute.

In *Kobrin v. Gastfriend*, 821 N.E.2d 60 (Mass. 2005), the court held that an expert witness hired by an administrative board to provide an expert report and testimony could not claim the protection of the anti-SLAPP statute for statements made before the board because he was not exercising his own right to petition or seek redress from the administrative board. *Id.* at 64-65. Relying on the language of the statute, the court explained that "[t]he statute explicitly extends protection to a party based on 'said party's exercise of *its* right of petition,'" *see id.* at 64 (quoting MASS. ANN. LAWS ch. 231, § 59H (LEXIS through 2011 Legis. Sess.)) (emphasis in case); *accord* 14 M.R.S. § 556 ("*moving party's* exercise of the *moving party's* right to petition"; "a party's exercise of *its* right of petition" (emphasis added)), and the right of petition protected is that guaranteed by the federal and state constitutions, *see* 821 N.E.2d at 65.[6] The expert "was not exercising *his* right to petition or seek any redress from the board (a government body), but rather was acting solely on behalf of the board as an expert investigator

---

[6] The Massachusetts Constitution provides, in relevant part:

> The people have a right, in an orderly and peaceable manner, to assemble to consult upon the common good; give instructions to their representatives, and to request of the legislative body, by the way of addresses, petitions, or remonstrances, redress of the wrongs done them, and of the grievances they suffer.

Mass. Const. pt. 1, art. XIX.

6

and witness." *Kobrin*, 821 N.E.2d at 65. Thus, the court held that the anti-SLAPP statute did not apply to the expert because he was not petitioning on his own behalf. *Id.* at 69.

Likewise, in *Fustolo v. Hollander*, 920 N.E.2d 837 (Mass. 2010), a reporter wrote a series of articles for a neighborhood paper in which she was critical of a developer's proposed projects. *Id.* at 839. The reporter was also a resident of the neighborhood in question and an active member of a community organization similarly critical of neighborhood development projects, but she did not disclose her membership in the organization in her articles and always wrote in an objective manner. *Id.* at 839, 842. When the developer sued for defamation, the reporter filed an anti-SLAPP motion, arguing that the articles "gave expression to her personal interests as a member of the community keenly interested in its development and protection" and that the reporting "played an essential role in facilitating the petitioning activity of [the community organization] and other members of the community." *Id.* at 840. The Massachusetts Supreme Judicial Court held, consistent with *Kobrin*, that the reporter's articles were not petitioning activity because they "did not contain statements seeking to redress a grievance or to petition for relief *of her own.*" *Id.* at 842.

Finally, in *The Cadle Co. v. Schlichtmann*, 859 N.E.2d 858 (Mass. 2007), the court addressed a website published by an attorney regarding the practices of a debt collection company; the attorney was also suing that company on behalf of four clients. *Id.* at 860-61. When the debt collection company sued for defamation and other various claims, the attorney responded with an anti-SLAPP motion that asserted the lawsuit was filed in retaliation for the attorney's petitioning activities. *Id.* at 862. On appeal, the court held that the website was not petitioning activities by an injured member of the public, but was, at least in part, commercial activity "as an attorney advertising his legal services" and attempting "to attract clients to his law practice." *Id.* at 864-65. Although the debt collection company's practices had generated

7

public and governmental interest, the court also noted: "[t]hat a statement concerns a topic that has attracted governmental attention, in itself, does not give that statement the [petitioning] character contemplated by the [anti-SLAPP] statute." *Id.* at 866-67 (quoting *Global NAPs, Inc. v. Verizon New Eng., Inc.,* 828 N.E.2d 529, 533 (Mass. App. Ct. 2005)) (third alteration added). Because the court concluded that the website did not constitute petitioning activities, the trial court's denial of the anti-SLAPP motions were affirmed. *Id.* at 867; *see also id.* at 864 ("if the *only* conduct complained of is petitioning activity, then there can be no other substantial basis for the claim" (quotation marks omitted)).

The Law Court has not addressed the scope of petitioning activities under Maine's anti-SLAPP statute in the same depth as have the Massachusetts courts. *But see Schelling,* 2008 ME 59, ¶ 11, 942 A.2d 1226 (indicating the right to petition protected by the anti-SLAPP statutes is very broad). Nevertheless, in light of the substantial similarity between the Maine and Massachusetts Constitutions and the Maine a Massachusetts anti-SLAPP statutes and, the court finds the reasoning of the Massachusetts cases persuasive.

First, the rights protected by the Massachusetts and Maine anti-SLAPP statutes are the same: the exercise of the rights of petition under the federal and state constitutions. *See* 14 M.R.S. § 556 (protecting the exercise of the "right of petition under the Constitution of the United States or the Constitution of Maine"); *cf.* MASS. ANN. LAWS ch. 231, § 59H (protecting the exercise of the "right of petition under the constitution of the United States or of the commonwealth"). Second, the Maine and Massachusetts Constitutions' respective guarantees of the right to petition contain nearly identical language. *Compare* Me. Const. art. I, § 15, *with* Mass. Const. pt. 1, art. XIX. Finally, both anti-SLAPP statutes expressly state that the right of petition protected is the constitutional right to petition of the party attempting to secure protection of the anti-SLAPP statue. *See* 14 M.R.S. § 556 ("*moving party's* exercise of the *moving*

8

*party's* right to petition"; "a party's exercise of *its* right of petition" (emphasis added)); MASS. ANN. LAWS ch. 231, § 59H ("said party are based on *said party's exercise of its* right of petition"; "a party's exercise of *its* right of petition" (emphasis added)).

Based on these similarities, the court concludes that the Law Court would limit the protection afforded by the Maine anti-SLAPP statute to statements or activities made in the moving party's exercise of its *own* right to petition. *See Fustolo*, 920 N.E.2d at 842; *Kobrin*, 821 N.E.2d at 65.

Plaintiffs allege that the media statement and the interviews were defamatory in nature and argue that Ace is not protected by section 566 because Ace was not seeking a redress of grievances or petitioning on its own behalf by issuing a media statement and cooperating with the Office of Securities' and Attorney General's respective investigations into Plaintiffs.[7] *See Fustolo*, 920 N.E.2d at 842; *Kobrin*, 821 N.E.2d at 69.

Ace asserts that its motive for what it claims to be petitioning activity is irrelevant. Motivation for petitioning activity is indeed irrelevant in an anti-SLAPP analysis, *see Office One, Inc. v. Lopez*, 769 N.E.2d 749, 757 (Mass. 2002), but Ace must still establish that it was in fact exercising its own right of petition by engaging in petitioning activity, *see* 14 M.R.S. § 556. Nothing in the record suggests that Ace's purpose in issuing the media statement was to influence any governmental body, enlist public participation, or "expand public consideration" on any matter relating to the media statement. *See id.* ¶ 13, 942 A.2d 1226.

Still, Ace's media statement arguably can be analogized to the letter to the editor in *Schelling*. Were the media statement "the *only* conduct complained of" by Plaintiffs, *see The Cadle Co.*, 859 N.E.2d at 864, the *Schelling* decision could support granting Ace's special motion

---

[7] Ace attempts to distinguish *Kobrin* on the ground that the expert was a government contractor, but the decision in *Fustolo* makes clear that the essential holding of *Kobrin* is not about the expert's status as a government contractor but his failure to engage in any activity seeking a redress of his own grievances to a government body.

to dismiss.[8] Plaintiffs' claims, however, not only assert defamation in the media statement, but also assert that Ace employees provided defamatory information in the course of the interviews with the Maine Office of Securities.

The record does not support Ace's argument that its interview responses reflected "petitioning" activity on its own behalf. Ace has not identified any grievance it had for which it was seeking redress, any interest of its own it was pursuing in the course of responding to questions in the interviews, or any issue under consideration it was attempting to influence or upon which it was attempting to enlist public participation to effect such consideration. It is undisputed that Ace did not initiate communications with the Office of Securities and that the Office of Securities initiated all communication with Ace. Moreover, Ace did not bring the alleged security violations to the attention of the Office of Securities; had it done so, this analysis might have had a different outcome. Ace was simply responding to inquiries in the context of a government investigation of third parties.[10]

The court has not located any authority, at least in Maine, for the proposition that statements *responding* to information requests, as opposed to statements initiating a discussion or a complaint, in the course of a civil or criminal prosecution of a third party from a law enforcement agency or an executive, legislative, or judicial body are protected under the anti-SLAPP statute.[11] This is not to say that the protection of the anti-SLAPP statute can

---

[8] That *Schelling* would compel a ruling for Ace were the Plaintiffs' claims for defamation and false light limited to the media statement is not clear. The *Schelling* case reflects a *very* broad application—perhaps defining the outer limits—of the anti-SLAPP statute.

[10] Pertinent anti-SLAPP cases indicate that protected petitioning activity can include reports made to a law enforcement agency when the moving party *initiated* the report. *See Benoit v. Frederickson*, 908 N.E.2d 714, 719 (Mass. 2009) (concluding a teenager's report of rape to the police was petitioning activity protected by the anti-SLAPP statute); *McLarnon v. Jokisch*, 727 N.E.2d 813, 816-18 (Mass. 2000) (holding that the protection of the anti-SLAPP statute "is broad enough to include filing for abuse protection orders and supporting affidavits").

[11] The court distinguishes between Ace's voluntary responses to activity at issue here and sworn testimony before an executive, legislative, or judicial body, which can be compelled by the governmental body.

10

never extend to statements made in response to a government inquiry, but only to say that statements initiating by the moving party can more clearly be considered petitioning activity.

*CONCLUSION*

In *Kobrin*, the Massachusetts high court said that in analyzing the merits of an anti-SLAPP motion to dismiss, "our only concern, as required by the statute, is that the person be truly 'petitioning' the government in the constitutional sense." 861 N.E.2d at 68 n.14. Ace has not established that the conduct on which Plaintiffs' claims for defamation (Count V) and false light (Count VI) are based consisted of Ace's own protected petitioning activity. Ace therefore has not made the initial showing required before the burden is shifted to the Plaintiffs, and it is unnecessary to proceed to that step of the analysis. *See* 14 M.R.S. § 556; *Duracraft Corp.*, 691 N.E.2d at 943.

On the other hand, the court is satisfied that Ace had ample basis for the motion—based on the Ace media statement, which is one of the bases for Plaintiffs' claims, arguably being protected—and therefore that the Plaintiffs' request for sanctions under M.R. Civ. P. 11 is uncalled for, and it is denied.

Based on the foregoing, Defendant Ace Hardware Corporation's special motion to dismiss is DENIED. Pursuant to M.R. Civ. P. 79, the clerk shall incorporate this order into the docket by reference.

Dated 12 March 2012

A. M. Horton
Justice, Business and Consumer Court

11

# BUSINESS AND CONSUMER COURT

## Kaile R. Warren, Jr. et al v. Preti, Flaherty, Beliveau & Pachios, LLC et al
### BCD-CV-2011-28

*Counsel of Record*

| Attorney Name | Party Name |
|---|---|
| Daniel Lilley, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| Tina Nadeau, Esq. | Kaile Warren, Jr. et al (Plaintiffs) |
| John Aromando, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Mark Porada, Esq. | Preti, Flaherty, Beliveau & Pachios (Defendant) |
| Peter DeTroy, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Russel Pierce, Esq. | Marcus, Clegg & Mistretta (Defendant) |
| Thimi Mina, Esq. | Ace Hardware Corp (Defendant) |
| Samuel Moulthrop, Esq. | Ace Hardware Corp (Defendant) |

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-CV-11-28
AMH - CUM- 3/12/2013

KAILE R. WARREN, JR.,
RENT-A-HUSBAND LLC,
RENT-A-HUSBAND ENTERPRISES,
LLC, and KW ENTERPRISES, INC.,

   Plaintiffs,

  v.

PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLC, MARCUS, CLEGG &
MISTRETTA, P.A., and ACE
HARDWARE CORP.,

   Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

✓

## ORDER ON DEFENDANTS' JOINT MOTION TO COMPEL

On December 3, 2012, Defendants Preti, Flaherty, Beliveau & Pachios, LLC (Preti), Marcus, Clegg & Mistretta, P.A. (MCM), and Ace Hardware Corp. (Ace) jointly moved to compel production of documents from the Maine Attorney General's office as they related to the civil and criminal prosecutions of Plaintiff Kaile R. Warren, Jr. *See* Superseding Indictment, *State v. Warren*, CUMSC-CR-2009-9716 (Me. Super. Ct., Cum. Cty., Apr. 9, 2010). The Attorney General asserted that both work-product privilege and deliberative process privilege protected the documents in question.[1]

---

[1] The Attorney General also asserted work-product protection for the documents. *See* M.R. Civ. P 26(b)(3). Because, however, 1) the Defendants and the Attorney General are not adversaries in this proceeding; 2) the Defendants were not a party to the prior proceeding; and 3) the Attorney General is not a party to the present proceeding, work product protection is inapplicable. The Court does not address this argument any further.

1

The Court heard oral argument on the motion on February 3, 2012, but at that time, the deposition of Assistant Attorney General Colleran had not yet taken place. The Court instructed the parties to "proceed with the deposition of [AAG] Colleran, focusing on documents already disclosed." (CMC Order No. 2, Feb. 9, 2012, at 3.)

The parties could then re-present their arguments with more context for the Court and in light of the actual objections made at the deposition. The Colleran deposition could not be scheduled before the case was stayed pending Ace's appeal of the Court's March 12, 2012, order, which denied Ace's special motion to dismiss. Once the stay was lifted in June of 2012, the case proceeded and AAG Colleran's deposition took place on September 18, September 19, and November 5 of 2012. The parties then supplied the Court with supplemental briefing in December of 2012. The Court heard oral argument again on January 9, 2013.

One of the key issues in this case is why the Attorney General decided to forego its criminal and civil prosecutions against Kaile Warren in favor of a civil consent judgment. In a letter to Rent-A-Husband investors dated February 18, 2011, AAG Colleran wrote that the State had been investigating Warren's claim

> to have relied upon his attorneys in disclosing information to investors and drafting the promissory notes. We finally obtained documents from [Warren's] former law firm late in 2010 and received further explanatory information from them last month. This evidence has caused us to conclude that we would be unlikely to obtain criminal convictions against Mr. Warren. As a result, we have decided to pursue a civil enforcement action against Mr. Warren instead of continuing with the criminal prosecution. In civil actions, the State need not prove that Mr. Warren acted knowingly or intentionally, and the extent to which he relied upon counsel is not the obstacle it would be in a criminal case.
>
> After several weeks of discussions, we have reached an agreement with Mr. Warren under which a civil judgment will be entered against him for sale of unregistered securities and failure to disclose material facts in connection with securities transactions.

(Colleran Depo. Exh. 49.) The civil consent judgment, dated February 23, 2011, dismissed the pending criminal charges but obligated Warren, Rent-A-Husband, LLC, and KW Enterprises,

Inc. to pay restitution in the amount of $1,994,657.08 (plus post judgment interest at the rate of 6.30% from the date of judgment) to the State of Maine. Consent Judgment, *State v. Rent-A-Husband, LLC*, CUMSC-CV-2011-07, at ¶ 1 (Me. Super. Ct., Cum. Cty., Feb. 23, 2011) (hereinafter, "Consent Judgment).[2] The State, in turn, would distribute the restitution *pro rata* to the victims identified in the Superseding Indictment. (Consent Judgment ¶ 2.)

The Consent Judgment also required that Warren, Rent-A-Husband, and KW Enterprises "make best efforts to recover damages from any person or entity . . . who might be liable to the Defendants in connection with activities that are the subject of the Superseding Indictment and the Amended Civil Complain in this matter." (Consent Judgment ¶ 3.) The Consent Judgment further required that Warren, Rent-A-Husband, and KW Enterprises "make monthly detailed reports to the State regarding these efforts" and prohibited them from settling claim unless it was on "terms acceptable to the State." (Consent Judgment ¶ 3.) Any funds recovered would go to fund the restitution and interest requirements of the Consent judgment. (Consent Judgment ¶ 3.) The Plaintiffs filed suit in this case against the Defendants less than one month after the court approved the Consent Judgment.

The Court recognizes the vital importance of the deliberative process privilege.[3] The privilege protects

> documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance

---

[2] The Consent Judgment appears in several places in the record: as Exhibit C to Plaintiffs' Complaint; as Exhibit 2 to Defendants' Joint Motion to Compel dated January 19, 2012; and attached to Defendants' supplemental briefing on the Joint Motion to Compel.

[3] Although the Law Court has not formally recognized the privilege, the court has consistently forbade inquiry "inquiry into the mental processes of administrative decision maker[s]." *Cutler v. State Purchasing Agent*, 472 A.2d 913, 918 (Me. 1984).

Defendants have not asserted that the documents are not subject to the deliberative process privilege. Instead, the parties have asserted their substantial need for the information.

the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government.

*Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001).

Nevertheless, as the Attorney General concedes, the privilege is not absolute. The documents may be disclosed if the court determines that the "plaintiff's need for the information outweighs the [agency]'s claim of privilege" and the party seeking the documents has the burden of establishing that need. *See Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 66 (1st Cir. 1984). "The interest of the party seeking disclosure tends to be strongest when the information in question is highly relevant, helpful, and unavailable from other sources." *Id.*

In the present case, the Court has limited Defendant's inquiry to documents relevant to the Attorney General's decision to indict Warren and the ultimate decision to pursue a civil consent judgment instead of a criminal case,[+] and the Court has reviewed *in camera* the documents filed by the Attorney General. The bases of the decision to indict and the decision to settle are the key causation issues in the malpractice case. Plaintiffs assert that they relied upon the advice of counsel in issuing promissory notes to raise capital for the Rent-A-Husband venture, notes that violated Maine securities laws and led to the criminal prosecution of Plaintiff Warren. Defendants assert that Plaintiff Warren made misrepresentations to investors unrelated to the advice given by Preti and MCM.

---

[+] Defendants' initial motion was quite broad, seeking the State's complete civil and criminal files regarding the prosecution of Warren and the other Plaintiffs, including notes of AAG Colleran, and the State's complete file regarding the Consent Judgment. Ostensibly, the request covered the time period from before the original indictment in 2009 through the 2011 consent judgment.

In its supplemental briefing of this issue, the Attorney General suggested that "[a]ny intrusion" into the deliberative process privilege "should be limited to documents and testimony regarding the decision to charge Warren in December of 2009 and documetns and testimony regarding the decision to resolove the case in January-February 2011." (AG's Supp. Opp'n 10.) The Court agreed and the AG filed those documents with the Court for its *in camera* review, divided into documents relevant to the indictments and documents relevant to the dismissal.

4

Much has already been produced in discovery related to the Attorney General's decision-making process,[5] and if this case were not unusual in two respects the Court would likely leave the parties to the existing discovery. The Court has reviewed the cases cited by Defendants in support of the motion and the Attorney General and in opposition to the motion, but none of these cases fully squares with facts of this case.

The two respects that set this case apart are: first, the fact that the agency decision maker has already made a substantial disclosure as to the deliberative process, as reflected in Mr. Colleran's February 2011 letter to investors, and second, the agency's initial and continuing role in this civil case, as contemplated in the Consent Judgment, despite the fact that the agency is not a party. The Consent Judgment *required* Plaintiffs to bring this action.[6] Moreover, the Attorney General is not a passive spectator in these proceedings. The Attorney General can prevent Plaintiffs from settling this action if it determines the terms are "unacceptable," an undefined, and thus highly discretionary standard.

Under the peculiar circumstances of this case, the Court concludes that the documents filed *in camera* should be produced to the Defendants. The information cannot be obtained from any other source, and its relevance and central significance to this case can hardly be overstated. The Court does not reach this decision lightly, and cautions that the analysis is highly specific to the unusual circumstances of this case. Nevertheless, Defendants have met their burden and, with one redaction for privileged information unrelated to this case in an internal memorandum,[7] the Court grants Defendant's motion to compel with respect to the documents filed *in camera*. On the other hand, based on the present record, the Court has no

---

[5] (*See* AG's Supp. Opp'n 5-6 (listing discovery already produced or adduced on this topic).)

[6] The common law has long recognized that a party may not put a communication into issue in litigation and then assert a privilege as to that communication, as is evident in modern-day privilege rules. *See, e.g.*, M.R. Evid. 502(d)(3); M.R. Evid. 503(e)(3).

[7] The documents filed in camera were not indexed or Bates stamped, but the redacted document is the first page of a memo dated March 22, 2010. The Court is redacting the first paragraph and the final, partial paragraph of that single-paged document.

intention of permitting any further inquiry into the agency decision making process. No party will be allowed to bootstrap the disclosure mandated by this Order into further discovery that would not have been allowed in the absent of the disclosure mandated by this Order. In other words, the parties will have to work with the data they have, and will get by virtue of this Order.

Consistent with the Court's order on Defendant Preti's Motion for Protection, the Court will hold the documents for twenty-two more days to afford the Attorney General the opportunity to appeal. *See Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 198 (Me. 1990); *Moffett v. City of Portland*, 400 A.2d 340, 343 n.8 (Me. 1979).

Based on the foregoing, it is hereby ORDERED as follows:

1. Defendants' motion to compel is GRANTED in part, and DENIED in part. The Court GRANTS the motion with respect to the documents filed *in camera* with the court, with the exception of a redacted document described in footnote 7 of the order. The Court DENIES the motion in all other respects.

2. The Clerk will release only this Order at this time.

3. If the Attorney General files a notice of appeal within 21 days of this Order, those documents shall remain sealed until further order.

4. If no notice of appeal is filed within 21 days of this Order, or if the Attorney General alerts the Clerk that it intends to file no such notice, the Clerk shall provide copies of the documents described in paragraph 1(a) to the parties. The unredacted, partially-privileged document shall remain sealed.

5. The documents that are the subject of this order shall be subject to the parties' existing Confidentiality Order.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: March 12, 2013

A. M. Horton
Justice, Business & Consumer Court

Entered on the Docket: 3.12.13
Copies sent via Mail ___ Electronically ___

6

**BCD-CV-11-28**
**Warren, et al          v.          Preti Flaherty, et al**

Dan Lilley, Esq
Daniel G. Lilley Law Office
39 Portland Pier
P.O. Box 4803
Portland, ME

John Aromando, Esq
Pierce Atwood, Merrills Wharf
254 Commercial Street
Portland, Maine

Peter DeTroy, Esq.
Norman Hanson & Detroy
415 Congress Street
P.O. Box 4600
Portland, ME

Thimi Mina, Esq.
McCloskey Mina & Cunniff
12 City Center
Portland, ME

STATE OF MAINE                          BUSINESS & CONSUMER COURT
CUMBERLAND, ss.                         LOCATION: Portland
                                        Docket No. BCD-CV 11-28

KAILE R. WARREN, JR.,                   )
RENT-A-HUSBAND LLC,                     )
RENT-A-HUSBAND ENTERPRISES,             )
LLC, and KW ENTERPRISES, INC.,          )
                                        )
            Plaintiffs,                 )                    ✓
                                        )
    v.                                  )
                                        )
PRETI, FLAHERTY, BELIVEAU &             )
PACHIOS, LLC, MARCUS, CLEGG &           )
MISTRETTA, P.A., and ACE                )
HARDWARE CORP.,                         )
                                        )
            Defendants                  )

## ORDER ON ACE'S MOTION TO DISMISS COUNT VIII

On October 16, 2012, the Court issued an order on several pending discovery motions. As part of that order, the Court required Plaintiffs to "supplement their responses to interrogatories 4, 5, and 6 of Ace's first set of interrogatories regarding alleged misrepresentations by Ace" by November 9, 2012. (Disco. Order 1.) The Court ordered that Plaintiffs specify "1) each allegedly false statement, 2) who made the statement and to whom the statement was made, 3) when it was made, 4) how the statement was conveyed to Plaintiff, and 5) what about the statement was false." (Disco. Order 1.) Plaintiffs supplemented their interrogatories to Defendant Ace Hardware Corp. (Ace) on November 9, 2012. Ace now moves, pursuant to M.R. Civ. P. 9(b) and 41(b)(2), for involuntary dismissal of Count VIII (intentional misrepresentation) of the Plaintiffs' Second Amended Complaint for failure to comply with the Maine Rules of Procedure and the Court's October 16, 2012, discovery order.

In the alternative, Ace requests the Court order that Plaintiffs' fraud claims are limited to those statements that are sufficiently particular in Plaintiffs supplemental interrogatory responses.

Broadly, Ace asserts that despite two amendments of Plaintiffs' complaint,[1] Plaintiffs' first responses to Ace's interrogatories, and a court-ordered supplementation of those responses, Ace still lacks sufficient notice of all the particulars of the allegedly false statements, most notably, what about those statements Plaintiffs consider to be false. Ace does not substantively challenge the sufficiency of the pleadings pursuant to M.R. Civ. P. 12 or the sufficiency of the evidence pursuant to M.R. Civ. P. 56. Rather, Ace "seeks to dismiss or limit the Plaintiffs' fraud claim because it is impossible for Ace to determine what fraud allegations it must defend itself against."

Plaintiffs' opposition to the motion asserts that Ace's motion is premature, as discovery is ongoing and Plaintiffs have not yet deposed several Ace executives. Plaintiffs assert that Ace is "attempting to limit discovery on the issue of fraud to what has been provided through Plaintiffs' interrogatory responses" and granting Ace's motion would unfairly foreclose Plaintiffs from developing facts through discovery.

Rule 41(b) stems from the inherent authority of the trial courts to "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Westbrook v. Wallace*, 478 A.2d 687, 689 (1984) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962)). Thus, pursuant to Me. R. Civ. P. 41(b)(1), a trial court may dismiss an action *sua sponte* for failure to prosecute a case, encompassing a broad range of circumstances from instances where no action has been taken in a case for two years or when a plaintiff's attorney fails to appear at trial. *See Westbrook*, 478 A.2d at 689-90. Similarly, Rule 41(b)(2) authorizes a trial judge, on motion by a defendant, to dismiss any claim against the defendant for failure to prosecute or "failure . . . to

---

[1] Currently pending before the Court is Plaintiffs motion to amend their complaint for a third time, but not in any way that affects the present motion. Ace opposes the motion to amend.

comply with the[ civil] rules or any order of court." Nevertheless, the Law Court has cautioned that "[s]uch power should be exercised only with full appreciation and consideration of the plight of the plaintiff" and the "values underlying our system of justice which favors resolution on the merits." *Wallace*, 478 A.2d at 690; *accord State v. Bowring*, 490 A.2d 667, 669 (Me. 1985) ("A court should exercise its inherent power to dismiss only when the party bringing the action has failed to fulfill its duty to the court").

Ace's motion is not grounded upon lack of prosecution; rather, Ace seeks dismissal of Count VIII of Plaintiffs' second amended complaint because Plaintiffs failed to comply with the court's mandate that Plaintiffs supplement their responses to Defendant's interrogatories. Ace asserts that Rule 41(b)(2) is a vehicle for defendant to dismiss a plaintiff's claim for failing to comply with an order or rule designed to put them on notice of the particulars of the claim.

While this may be true in federal cases, *see, e.g., Angulo-Alvarez v. Aponte*, 170 F.3d 246, 251-52 (1st Cir. 1999); *Abdullah v. Acands, Inc.*, 30 F.3d 264, 269-70 (1st Cir. 1994), the Law Court has been more cautious, requiring fair notice of the risk of dismissal to a plaintiff for failure to comply with the court's order, *see Miller v. Perry*, 468 A.2d 981, 983 (Me. 1983). The case cited by Ace, *Nevijel v. North Coast Life Insurance Co.*, 651 F. 2d 671 (9th Cir. 1981), is consistent with necessitating notice to a plaintiff that continued failure to comply with a court's order will result in dismissal.

Further, dismissal for failure to properly plead a cause of action is more appropriately directed to a Rule 12 motion than a Rule 41 motion. *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124 (9th Cir. 2008) (concluding the rule 41 dismissal of a plaintiff's 68-page first amended complaint solely for the failure to satisfy the "short and plain statement standard" was an abuse of discretion); *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (concluding the trial

3

court abused its discretion when, it dismissed plaintiff's claim for failure to comply with a court order that required a complaint that "substantially exceeded the requirements of Rule 8").

Nevertheless, the Court has reviewed Plaintiffs' supplemental interrogatories and finds that they are not in compliance with the court's discovery order. The Court agrees with Ace that Plaintiffs have still failed to identify what about each particular statements Ace made was false at the time it was conveyed to Plaintiffs. Although "Maine is a notice pleading state, . . . only requir[ing] a short and plain statement of the claim to provide fair notice of the cause of action," *Johnston v. Me. Energy Recovery Co.*, 2010 ME 52, ¶ 16, 19 A.3d 823, fraud is a special matter that must be plead in more detail than a general matter. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake *shall be stated with particularity.* Malice, intent, knowledge, and other condition of mind of a person may be averred generally." M.R. Civ. P. 9(b) (emphasis added); *cf.* M.R. Civ. P. 8.

The requirement to plead fraud with particularity is to ensure "the defendant is fairly apprised of the elements of the claim." 2 Harvey, *Maine Civil Practice* § 9:2 at 384 (3d ed. 2011). Notably, pleading fraud with particularity is not a new requirement in Maine. Any party

> seeking relief on the ground of fraud, accident or mistake, must directly charge the grounds relied upon. The statement should be so full and explicit as to show the court a clear picture of the particulars of the fraud, — the manner in which the party was misled, or imposed upon, — the character and causes of the accident, or mistake, and how it occurred. Without such a statement . . . the court can not grant relief or even hear evidence in the matter.

*Semo v. Goudreau*, 147 Me. 17, 20-21, 83 A.2d 209, 211 (1951).

Plaintiffs assert that their fraud claim has been stated with sufficient particularity, but the Court disagrees. The Court ordered that Plaintiffs specify "1) each allegedly false statement, 2) who made the statement and to whom the statement was made, 3) when it was made, 4) how the statement was conveyed to Plaintiff, and 5) what about the statement was false." (Disco. Order 1.) The Court's review of the supplemental interrogatories filed by Plaintiffs leads the

4·

Court to conclude, similar to Ace, that Plaintiffs allegations of fraud are at best unclear and at worst incoherent and intentionally vague. Rather than providing a clear statement comporting with the Court's order, Plaintiffs submitted a rambling narrative of non-sequential events that fails to satisfy the Court's mandate—which was essentially a restatement of the requirements of Rule 9(b). In any event, the responses to do not provide Ace with a fair apprisal of the basis of Plaintiffs' fraud claim.

The Court is left with the dilemma of how to reconcile Plaintiffs' noncompliance with its order and their insufficient pleading with the Ace motion that does not challenge the sufficiency of the Plaintiffs' pleading. The Court had intended to order Plaintiffs once again to provide a concise recitation of the circumstances of each allegedly false representation Ace made in a standardized format,[3] but such an order affords Plaintiffs an opportunity to which they are not entitled, given the late stage of the proceedings and their repeated noncompliance with the pleading requirements of a fraud claim.

Instead, the Court will permit Ace to make an appropriate motion regarding the sufficiency of the pleadings. Plaintiffs have been amply advised in this matter that the supplementation to their interrogatory responses would define the scope of their fraud claim.

---

[3] To avoid any confusion about what is necessary to comply with M.R. Civ. P. 9(b), the Court provides the following format and an example based on *Gorman v. Maine Eye Care Associates, P.A.*, 2008 ME 36, 942 A.2d 707:

1.  Alleged misrepresentation

    *   Who said it and to whom
    *   When it was made
    *   How the statement was conveyed
    *   What about the statement is false at the time it was made

A.  Dr. Gorman told MECA that she and her partner would buy the MECA practice.

    *   Dr. Gorman said this to the principals of MECA
    *   September of 2000
    *   In person
    *   Dr. Gorman and her partner did not in fact want to purchase the practice at the time she said it.

5

(Disco. Order 1 ("what claims Plaintiffs will be permitted to present to the jury will be defined by the pleadings, as illuminated or clarified by discovery responses").) *See also Semo,* 147 Me. at 20-21, 83 A.2d at 211. Plaintiffs have supplemented their interrogatory response and in fairness to Ace the Court will not permit any further supplementation, alteration, or clarification, regardless of developments in discovery. The status of the fraud claim is the state of the allegations within the Second Amended Complaint and the interrogatory responses as of the date of this Order.

Ace's motion to dismiss pursuant to M.R. Civ. P. 41 is hereby denied without prejudice to its renewal through a motion pursuant to M.R. Civ. P. 12 and/or 56.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order in the docket by reference.

Dated: March 12, 2013

A.M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 3.12.13
Copies sent via Mail ___ Electronically ✓

6

**BCD-CV-11-28**
**Warren, et al**          v.          **Preti Flaherty, et al**

Dan Lilley, Esq
Daniel G. Lilley Law Office
39 Portland Pier
P.O. Box 4803
Portland, ME

John Aromando, Esq
Pierce Atwood, Merrills Wharf
254 Commercial Street
Portland, Maine

Peter DeTroy, Esq.
Norman Hanson & Detroy
415 Congress Street
P.O. Box 4600
Portland, ME

Thimi Mina, Esq.
McCloskey Mina & Cunniff
12 City Center
Portland, ME

STATE OF MAINE
Cumberland, ss.

BUSINESS & CONSUMER COURT
LOCATION: Portland
Docket No. BCD-CV 11-28

AMA – Cum –3/26/2013

)
KAILE R. WARREN, JR.,                              )
RENT-A-HUSBAND LLC,                                )
RENT-A-HUSBAND ENTERPRISES,                        )
LLC, and KW ENTERPRISES, INC.,                     )
                                                   )      ✓
            Plaintiffs,                            )
                                                   )
    v.                                             )
                                                   )
PRETI, FLAHERTY, BELIVEAU &                        )
PACHIOS, LLC, MARCUS, CLEGG &                      )
MISTRETTA, P.A., and ACE                           )
HARDWARE CORP.,                                    )
                                                   )
            Defendants                             )
                                                   )

### ORDER ON PLAINTIFFS MOTION TO AMEND COMPLAINT

Plaintiffs Kaile R. Warren, Jr., Rent-A-Husband LLC, Rent-A-Husband Enterprises, LLC, and KW Enterprises, Inc. move to amend their complaint for a third time to add two counts against Ace Hardware Corp. (Ace): breach of fiduciary duty (Count V), and violation of the Uniform Trade Secrets Act, 14 M.R.S. §§ 1541-48 (2012), (Count VI).[1] Plaintiffs assert that the facts to support these counts have been previously pleaded in their Second Amended Complaint or generated during the course of discovery. Plaintiffs further assert that their motion is not sought in bad faith or for a dilatory reason, and that Ace will suffer

---

[1] Plaintiffs' First Amended Complaint was filed on April 20, 2011, as of right. *See* M.R. Civ. P. 15(a). The Court granted Plaintiffs' motion to amend on October 25, 2012, resulting in Plaintiffs' Second Amended Complaint.

1

no undue prejudice from the amendment. The Court held oral argument on the motion on March 20, 2012.

After a responsive pleading is served, a plaintiff may amend its complaint "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." M.R. Civ. P. 15(a); *see also Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 21, 956 A.2d 110. "Whether to allow a pleading amendment rests with the court's sound discretion." *Holden v. Weinschenk*, 1998 ME 185, ¶ 6, 715 A.2d 915 (quoting *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 616 (Me. 1992)). Courts should freely allow an amendment to a complaint except for bad faith, dilatory tactics, or undue delay resulting in prejudice to the opponent. *Longley v. Knapp*, 1998 ME 142, ¶ 19, 713 A.2d 939. Nevertheless, a moving party must make a timely request to amend a pleading, particularly when the deadline for amendment of pleadings has passed. *See El-Hajj v. Fortis Benefits Ins. Co.*, 156 F. Supp. 2d 27, 34 (D. Me. 2001), *quoted in Davis v. Grover*, 2002 Me. Super. LEXIS 69, at *9 (Apr. 3, 2002) (Mead, J.). Further, where "a proposed amended complaint would be subject to a motion to dismiss, the court is well within its discretion in denying leave to amend." *Glynn v. City of S. Portland*, 640 A.2d 1065, 1067 (Me. 1994).

In the present case, Plaintiffs announced their intention to seek leave to amend during an argument on a discovery issue on November 1, 2012. Plaintiffs again stated their intention to file the motion to amend at a hearing on December 17, 2012. At that time, the Court observed that the success of a motion to amend was inversely related to the closeness of the trial date. Plaintiffs filed the motion to amend on January 9, 2013.

As Ace has noted, the proposed amendment is more than a year past the deadline of January 1, 2012, for amendment of pleadings. Plaintiffs attempt to justify that delay by arguing that the facts to support each of the proposed new claims were developed during ongoing discovery.

As to their proposed breach of fiduciary duty claim, Plaintiffs assert that as facts regarding the partnership relationship between them and Ace developed during discovery, the breach of fiduciary duties attendant in such a relationship became clear, but the Court is not persuaded. Plaintiffs have consistently asserted that they had a partnership relationship with Ace.[2] Thus, if there is indeed any basis for a breach of fiduciary claim against Ace, it was known to Plaintiffs when they filed their initial complaint in March 2011.[3] *See McIntyre v. Nice*, 2001 ME 174, ¶ 10, 786 A.2d 620. In October 2011, the Court noted that the Plaintiffs' Second Amended Complaint does not sufficiently allege a fiduciary relationship, much less a breach claim. (Oct. 25, 2011, Order at 9 n.4 ("The Plaintiffs have not established sufficient facts supporting the allegation that a fiduciary relationship existed between Plaintiffs and Ace simply because there were ongoing business discussions.").) The delay in bringing the breach of fiduciary claim forward has simply not been explained or justified.

Finally, the Plaintiffs' proposed amendments are mere recitations of the elements of the cause of action and offer no further specifics about the alleged fiduciary relationship. *See America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 13, -- A.3d ---; *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 21, 738 A.2d 839. The gravamen of Plaintiffs'

---

[2] (*See* Compl. ¶¶ 79-80, 82-84, 92, 95-97, 163; Amend. Compl. ¶¶ 79-80, 82-84, 92, 95-97, 163, 219; 2d Amend. Compl. ¶¶ 45, 79-80, 82-84, 86, 90, 94-97, 108, 210.)

[3] The stay of this case for several months, during which Ace pursued an interlocutory appeal, does not affect this analysis as the amendment of pleadings deadline had already passed at that point.

3

dispute with and against Ace is an arms-length business deal gone south. *See America*, 2013 ME ¶ 15, -- A.3d --- (analyzing the substance of the overall complaint). *See also Clappison v. Foley*, 148 Me. 492, 497-99, 96 A.2d 325, 327-28 (1953) (noting that where the complaint does not demonstrate evidence of a fiduciary relationship, but instead only conventional business dealings, the motion to dismiss must be granted).

With respect to the trade secret claim, Plaintiffs' assertion that it was revealed only in the course of discovery that "Ace misappropriated the Plaintiffs' 'hub-and-spoke' model for Rent-a-Husband's placement in stores for itself" (M. Amend. 3) is more plausible. Nevertheless, as Plaintiffs admit, the UTSA claim is not contemplated by the previous complaints. In fact, it is a vast departure from the theories presently asserted against Ace and would open up a completely new and different set of issues between the Plaintiffs and Ace.

> As the Law Court has explained, factors relevant to
>
> determin[ing] whether the information "derives independent economic value . . . from not being generally known [or] readily ascertainable," 10 M.R.S. § 1542(4)(A), include: (1) the value of the information to the plaintiff and to its competitors; (2) the amount of effort or money the plaintiff expended in developing the information; (3) the extent of measures the plaintiff took to guard the secrecy of the information; (4) the ease or difficulty with which others could properly acquire or duplicate the information; and (5) the degree to which third parties have placed the information in the public domain or rendered the information "readily ascertainable" through patent applications or unrestricted product marketing.

*Spottiswoode v. Levine*, 1999 ME 79, ¶ 27 n.6, 730 A.2d 166. Similarly, factors relevant to

> determin[ing] whether the information "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy," 10 M.R.S. § 1542(4)(B), include: (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which employees and others involved in the plaintiff's business know the information; (3) the nature and extent of measures the plaintiff took to guard the secrecy of the information; (4) the existence or absence of an express agreement restricting disclosure;

4

and (5) the circumstances under which the information was disclosed to any employee, to the extent that the circumstances give rise to a reasonable inference that further disclosure without the plaintiff's consent is prohibited.

*Id.* ¶ 27 n.7.

Trial of this case was originally set for June 2013, and it is now set for January-February 2014. The court is in the process of resetting deadlines to enable discovery, expert witness activity and dispositive motion briefing to be completed sufficiently ahead of trial to enable the parties to know what claims will be going to trial. Because the Plaintiffs' proposed UTSA claim would likely entail discovery well beyond the discovery already taken in connection with the present claims against Ace, allowing the amendment would almost certainly require further delays in this two-year-old litigation.

As an aside, the UTSA claim as pleaded in the amendment is arguably facially deficient. *See Glynn*, 640 A.2d at 1067. The complaint fails to state how the hub-and-spoke model "[d]erives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use," as required by 10 M.R.S. § 1542(4)(A) (2012).

The Court is cognizant that leave to amend should be freely granted:

The philosophy of the rules is that pleadings are not an end in themselves but only a means of bringing into focus the area of actual controversy. Leave to amend should be freely granted when justice so requires. A party should not be precluded by the technicalities of pleading from presenting his claim or defense on its merits unless the pleadings have misled the opposing party to his prejudice.

*Bangor Motor Co. v. Chapman*, 452 A.2d 389, 392 (Me. 1982) (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.1 (1970)). "[P]rejudice means something more than an

5

increased likelihood of defeat in the litigation if the amendment is granted." *Id.* (quoting 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 (1970)).

Undue prejudice to the opponent can occur when the newly asserted claim inserts a new issue into the case that has not been previously raised or litigated. *See id.* at 393. Similarly, the Law Court has affirmed the denial of a motion to amend to add permissive counterclaims when the request was made more than a year after the litigation between the parties began and no reasonable excuse for the delay was provided. *See Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶¶ 21-22, 956 A.2d 110; *cf. Kelley v. Michaud's Ins. Agency*, 651 A.2d 345, 347 (Me. 1994) (a delay of six weeks after a party's responsive pleading is not undue delay to justify denying a motion to amend). "Although passage of time, alone, is not grounds for denying a motion to amend, 'undue delay' removes any presumption in favor of allowing amendment." *See Diversified Foods, Inc. v. First Nat'l Bank*, 605 A.2d 609, 616 (Me. 1992) (citation omitted) (concluding an intentional delay of seven months to add claims supported denial of the motion to amend).

In this case, allowing the Plaintiffs to amend again, would almost certainly cause further substantial delay, and also work undue prejudice to Ace, given the posture of the case and the lack of justification for the amendment.

Accordingly, Plaintiffs' Motion to Amend Complaint is DENIED.

Pursuant to M.R. Civ. P. 79, the clerk shall incorporate this order into the docket by reference.

Dated: March 26, 2013

A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 3.27.13
Copies sent via Mail ___ Electronically ✓

**BCD-CV-11-28**
**Warren, et al**        v.        **Preti Flaherty, et al**

Dan Lilley, Esq
Daniel G. Lilley Law Office
39 Portland Pier
P.O. Box 4803
Portland, ME

John Aromando, Esq
Pierce Atwood, Merrills Wharf
254 Commercial Street
Portland, Maine

Peter DeTroy, Esq.
Norman Hanson & Detroy
415 Congress Street
P.O. Box 4600
Portland, ME

Thimi Mina, Esq.
McCloskey Mina & Cunniff
12 City Center
Portland, ME